## Pennsylvania Human Relations Commission v. Brucker

*Stanton W. Kratzok*, Assistant Attorney General, for plaintiff.

*David A. Williams*, for defendants.

CALDWELL, J., June 23, 1970.—This is an appeal from the decision and final order of the Pennsylvania Human Relations Commission in which the commission found that appellants had committed unlawful discriminatory practices in violation of section 5(h)(1) of the Pennsylvania Human Relations Act of October 27, 1955, P. L. 744, as amended, 43 PS §955(h)(1), in refusing to rent an apartment to a "Negro, because of his interracial marriage to a Caucasian." [1]

Appellants are Walter and Julia Brucker and Wil-

---

[1] See amended complaint.

liam D. Pugliese, Inc. They have filed exceptions to the decision and order of the commission, which can be summarized as follows:

1. That the findings of fact by the commission are not supported by the evidence;

2. That testimony given by an investigator-employe of the commission was improperly admitted;

3. That appellants were prejudiced by a newspaper article that appeared in the press following the hearing on this matter;

4. That the commission wrongfully refused to reopen the case for further testimony;

5. That the sanctions imposed in the final order of the commission are beyond the authority reposed in the commission under section 9 of the Pennsylvania Human Relations Act.

The Pennsylvania Human Relations Act, October 27, 1955, 43 PS §951, et seq., provides for judicial review of orders of the Human Relations Commission pursuant to the provisions of the Administrative Agency Law. (43 PS §960.) In Pennsylvania Human Relations Commission v. Altman, 42 D. & C. 2d 317, 87 Dauph. 227 (1967), this court discussed the statutory and legal guidelines applicable to a review of an order of the commission:

"We fully recognize that we cannot substitute our judgment for that of the commission: Eways v. Reading Parking Authority, 385 Pa. 592 (1956); Blumenschein v. Pittsburgh Housing Authority, 379 Pa. 566 (1954); Pennsylvania Insurance Department v. Philadelphia, 196 Pa. Superior Ct. 221 (1961); nor can we weigh the evidence: Pennsylvania State Board of Medical Education and Licensure v. Ferry, 63 Dauph. 243 (1952), aff'd, 172 Pa. Superior Ct. 372 (1953); nor pass on the credibility of witnesses: State Real Estate Commission v. Harris, 70 Dauph. 254 (1957).

But on the other hand, we also recognize that administrative discretion must be subject to judicial scrutiny or it will no longer be discretion but tyranny: 425-429, Inc., Liquor License Case, 179 Pa. Superior Ct. 235 (1955); Hotchkiss Liquor License Case, 169 Pa. Superior Ct. 506 (1951).

"The Administrative Agency Law, supra, in section 44, 71 PS §1710.44, provides:

" 'The court to which the appeal is taken shall hear the appeal without a jury on the record certified by the agency. After hearing, the court shall affirm the adjudication unless it shall find . . . that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence.'

"The 'substantial evidence' referred to in the above-quoted statute is well defined in Pennsylvania State Board of Medical Education and Licensure v. Schireson, supra, which quotes from the opinion by Mr. Justice Horace Stern (later Chief Justice) in Pennsylvania Labor Relations Board v. Kaufmann Department Stores, Inc., supra, at 400-01:

" 'All orders and decrees of legal tribunals including those of administrative boards and commissions, must be supported by evidence sufficient to convince a reasonable mind to a fair degree of certainty; otherwise our vaunted system of justice would rest upon nothing higher than arbitrary edicts of its administrators.

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion": Consolidated Edison Co. v. National Labor Relations Board, 305 U. S. 197, 229. "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established": National Labor Relations Board v. Columbian Enamel-

ing & Stamping Co., 306 U. S. 292, 300. "The rule of substantial evidence is one of fundamental importance and is the dividing line between law and arbitrary power": National Labor Relations Board v. Thompson Products, Inc., 97 Fed. 2d 13, 15; National Labor Relations Board v. Union Pacific Stages, Inc., 99 Fed. 2d 153, 177' ": Pages 324-25.

I

A thorough review of the record satisfies us that the findings and conclusions of the commission are supported by substantial evidence and under the legal rules set forth above must be affirmed.

The evidence in this case would support the following statement of facts: Walter and Julia Brucker are the owners of a 12-unit apartment complex, situate in Montgomery County and known as the Norbrook Apartments. William D. Pugliese, Inc., is a corporate real estate agency and was the Bruckers' agent for the rental of the Norbrook Apartments. William D. Pugliese is the president and owner of the Pugliese agency.

On or about October 14, 1968, Joyce Perry, the wife of the complainant and who is of the Caucasian race, phoned the Pugliese office seeking to rent an apartment. She was informed that a unit in the Norbrook Apartments was available and was told to come to the office to discuss the matter further. Mrs. Perry went to the agent's office, procured a key from the secretary on duty, conducted an inspection of the apartment, and informed the secretary that she and her husband would rent the apartment. At this time she was in the ninth month of pregnancy and obviously expecting the birth of a child. She was given an application form to complete and was told to return it with a deposit check. Mr. and Mrs. Perry completed the application,

noting that there were two in the family and "one on the way."

The following day, October 15, 1968, Mrs. Perry returned the application form to the Pugliese office with a deposit check in the sum of $40. At this time she was told by the secretary that she and her husband would both have to appear at the office to sign a lease. On Friday evening, October 18, 1968, Mrs. Perry and her husband, who is the complainant in the case and who is of the Negro race, called at the realtor's office where they were met by David Lindsey, a part-time real estate salesman and employe of William D. Pugliese, Inc. No one else was present in the realtor's office on this occasion. Lindsey prepared a one-year lease to begin November 1, 1968, which the Perrys signed. He informed them the lease would have to be submitted to the agent (Pugliese) and the owners (Bruckers) of the apartment for their approval and signatures.[2] The Perrys deposited a check for an additional $190 at this time, bringing the total deposited to $230, or the equivalent of two months' rent.

On Monday, October 21, 1968, Mr. Pugliese returned to his office, signed the lease as agent and forwarded it with a transmittal letter to the Bruckers. The transmittal letter noted that Mrs. Perry was expecting a child and concluded: "If this [lease] has your approved kindly sign all three copies and return to my office." Appellant-owners testified that about this time they were away on a trip, and that the lease did not come to their attention until on or about October 27, 1968.

On October 29, 1968, Mr. Pugliese learned that Mr. Perry was a Negro, and on October 30, 1968, he orally informed the Perrys that the lease would not be ap-

---

[2] At no time did Lindsey inform Mr. Pugliese that Mr. Perry was a Negro.

proved by the owners because they were enforcing a policy against renting to tenants with children under 14 years of age. On October 31, 1968, Mr. Pugliese also wrote to the Perrys concerning the refusal of the lease and returned their deposit checks.

Appellants contended before the commission that on July 15, 1968, the Bruckers established a policy that the Norbrook Apartments would no longer be leased to any applicant with children under 14 years of age, and that this was the reason for the refusal to rent the apartment to the Perrys. They sought to prove that the policy was orally established in a conversation between Walter Brucker, one of the owners, and William D. Pugliese, the agent. The commission apparently did not credit this testimony and we cannot say that its action was without foundation. The credibility of witnesses is for the commission to determine, and the commission's findings, when supported by testimony, have the force and effect of a verdict and are binding upon the court: State Real Estate Commission v. Harris, 10 D. & C. 2d 209, 70 Dauph. 254 (1957).

The Pugliese office secretary (Mrs. Templeton) was not presented as a witness, but Mrs. Perry testified that the secretary never mentioned any such policy on the two occasions that she spoke with her, although it was obvious that Mrs. Perry was going to have a child. David Lindsey, Pugliese's salesman, testified that he was not aware of any such policy regarding the apartments.[3] Pugliese's transmittal letter of October 21, 1968, by which the lease was forwarded to the owners for signature, notes that the Perrys were expecting a child but does not refer to any policy against children. It was also shown that in September 1968 one of

---

[3] The Norbrook Apartments were the only apartments that the Pugliese agency represented.

appellants' apartments was rented to tenants with a seven or eight-year-old child. Appellants testified that this particular transaction was an "exception" to the policy against children, but the commission apparently attached no weight to this explanation.

During the period between October 21 and 30, 1968, Mrs. Perry made several calls to Mr. Pugliese concerning the delay in obtaining approval of the lease, but, according to her, no mention was ever made of any policy against young children on these occasions. Certain conflicting correspondence was referred to which also could cast doubt on the validity of appellants' testimony that a rental policy concerning children was adopted on July 15, 1968.

One letter introduced into evidence, from Mr. Brucker to Mr. Pugliese, dated October 30, 1968, stated:

"*Confirming our conversation by phone this morning* in reference to Apartment 235-B, which lease was received at my office after the prior tenant vacated, and left the apartment in deplorable condition, that we would not rent to tenants *with children,* because each time they vacate we are put to excessive expense to make them in good condition for rentals": N. T. 145. (Italics supplied.)

Another letter, dated November 1, 1968,[4] again from Mr. Brucker to Mr. Pugliese, was read into evidence and stated:

"We are hereby notifying you in writing that our verbal requests at various times *over the past few years* that you do not accept or submit to us any applications from prospective tenants who have *or are about to have* children under the age of fourteen must be adhered to": N.T. 144 (Italics supplied.)

---

[4] This letter was referred to incorrectly in the record as exhibit R-3. It was not introduced as an exhibit, but its origin and existence were not denied.

On October 31, 1968, Mr. Pugliese wrote to the Perrys as follows (Exhibit C-5):

"The owner doesn't want to rent any more apartments to tenants having children or about to have children, *because of the noise and disturbances to the older tenants*": N.T. 35 (Italics supplied.)

The commission felt it significant that the Perrys were first told of the policy against children *after* appellants learned of Mr. Perry's race, and it concluded that race was the basis for the refusal of the lease.

As herein noted, it is not our function to substitute our judgment for that of the commission, and our review is limited to determining whether there is substantial evidence in the record to support the findings made by the commission. The only evidence concerning the existence of the policy against children was the oral testimony of the three appellants and the commission apparently chose not to rely on these declarations, basing its conclusions on inferences drawn from the other evidence produced at the hearing. While the evidence relied on by the commission was largely circumstantial, we cannot say that the commission's findings are without substantial foundation. It would be most difficult, if not impossible, to prove by direct evidence that refusal to rent the apartment was based upon race, and we believe the evidence supports the conclusions drawn by the commission.

In Smith v. Bell Telephone Company of Pennsylvania, 397 Pa. 134, 153 A.2d 477 (1959), the court set forth the test to be used in passing upon the sufficiency of circumstantial evidence:[5]

". . . [W]hen a party who has the burden of proof relies upon circumstantial evidence and inferences reasonably deducible therefrom, such evidence, in

---

[5] See also Griffith v. Clearfield Truck Rentals, Inc., 427 Pa. 30, 40, 233 A.2d 896, 901 (1967).

order to prevail, must be adequate to establish the conclusion sought and must so preponderate in favor of that conclusion as to outweigh in the mind of the fact-finder any other evidence and reasonable inferences therefrom which are inconsistent therewith": (Page 139).

We cannot say as a matter of law that the evidence relied on by the commission does not meet this standard, and we overrule appellants' first exception.

## II

The second exception raised by the appellants is that the testimony of an employe of the commission was improperly received and that the Human Relations Act prohibits the introduction of his testimony. We see no legal merit in this contention, and no authority has been submitted to support it.

The act provides, in part, as follows:

"After the filing of any complaint, . . . the Commission shall make a *prompt investigation* in connection therewith . . .

"If it shall be determined after such *investigation* that probable cause exists . . . the Commission shall immediately *endeavor* to eliminate the unlawful discriminatory practice complained of by *conference, conciliation and persuasion.* The members of the Commission and its staff shall not disclose what has transpired *in the course of such endeavors:* Provided, That the Commission may publish the facts in the case of any complaint which has been dismissed, and the terms of conciliation when the complaint has been adjusted, without disclosing the identity of the parties involved": 43 PS §959. (Italics supplied.)

It is clear that the quoted language does not prohibit the employes of the commission from testifying at hearings on complaints. It directs only that they shall not disclose what occurred in the course of their *"en-*

*deavors*" to eliminate unlawful practices by "*conference, conciliation* and *persuasion.*"

The testimony given by the employe of the commission in this case concerned events that occurred during his investigation on the day after the complaint was filed, and no mention was ever made of his endeavors, if any, to settle the complaint. Taking the section of the act by its four corners, it is apparent that its purpose is to discourage unfair or unfavorable publicity arising out of the commission's efforts to adjust complaints and the testimony received from the employe did not violate the act in this regard.

In any event, the evidence given by the investigator was not prejudicial to appellants. His brief testimony concerned the service of the complaint on appellants, a conversation with one of appellants, and the content of the letter of October 30, 1968, from Mr. Brucker to Mr. Pugliese.[6] The only findings of fact by the commission that relate to this testimony concern the letter (finding no. 19) and the means by which and the time when the owners first learned that Mr. Perry was a Negro (finding no. 18). Neither of these findings would be essential to the conclusions reached by the commission, and we dismiss this exception.

### III and IV

Appellants' third and fourth exceptions are without merit and must be overruled. The third exception concerns a news article that appeared in the Philadelphia Inquirer, Sunday, April 20, 1969, the day after the hearing on this matter. Among other things, the article quoted the chairman of the hearing panel, a layman, as stating he would recommend to the commission

---

[6] Section 7 of the act allows the commission "to require the production for examination of any books and papers relating to any matter under investigation . . .": 43 P.S. §957(g).

that it find against appellants.[7] The news item is attached to appellants' brief but there is no evidence in the record from which we could find that the chairman was responsible for the statement, and the findings and conclusions of the commission are supported by the record made before the hearing panel.

Appellants also complain that they should have been granted a rehearing of the case to show that on April 25, 1969, Roger Perry, the complainant, was involved in a disturbance at a tavern and was fined for disorderly conduct. They contend that this shows the adverse character, credibility and integrity of the complainant. The question here, of course, is whether appellants violated the act on or prior to October 31, 1968. The incident referred to by appellants occurred some six months after the alleged violation and has no bearing on the issue before us. Appellants raised no objection concerning Perry's character, credibility and integrity at the hearing, and the event referred to is clearly a collateral matter and irrelevant to the disposition of this appeal.

V

Appellants' last objection attacks the requirements imposed on them by paragraphs B-5 and B-6 of the final order of the commission, dated June 9, 1969, which are as follows:

"B-5 For a period of one year from the date of this Final Order notify the Commission in writing immediately, after any apartment becomes available for rent in any building owned, operated or controlled by said Respondents or either of them whether said building is located in North Wales or elsewhere in the Commonwealth of Pennsylvania.

---

[7] We would strongly condemn such conduct by any hearing examiner, who should refrain at all times from public comment concerning deliberations or decisions.

"B-6 Advise the Commission in writing of the name and address of the purchaser or grantee, before conveying title to any apartment building or other commercial housing in Pennsylvania owned, operated or controlled by the Respondents and certify to the Commission in said communication that such purchaser or grantee has been fully informed of the substance of this Final Order."

The thrust of the objection is that these orders constitute an abuse of discretion by the commission and exceed the power and authority vested in the commission under the Human Relations Act, which provides that the commission "shall issue . . . an order requiring such respondent to cease and desist from such unlawful discriminatory practice *and to take such affirmative action . . . as, in the judgment of the Commission, will effectuate the purposes of this act . . .*": 43 PS §959. (Italics supplied.)

It is well settled that an administrative body such as the Human Relations Commission is exercising powers delegated to it by the legislature, and that it is limited in its powers to those granted: In re Pesognelli Liquor License Case, 191 Pa. Superior Ct. 320, 156 A. 2d 540 (1959); Sanitary Water Board v. Glen Alden Corporation, 83 Dauph. 108 (1964). It is equally well settled that courts should not interfere with the actions of governmental bodies or administrative tribunals in absence of an abuse of power. See Goodman Appeal, 425 Pa. 23, 227 A.2d 816 (1967). These principles of law are to be applied in reviewing actions of the Human Relations Commission. See Pennsylvania Human Relations Commission v. Chester School District, 40 D. & C. 2d 493, 85 Dauph. 18 (1966), affirmed in 209 Pa. Superior Ct. 37, 224 A.2d 811 (1966), and modified in 427 Pa. 157, 233 A.2d 290 (1967).

The power and authority to be exercised by ad-

ministrative commissions must be conferred by legislative language clear and unmistakable. A doubtful power does not exist. Such tribunals are extrajudicial. They should act within the strict and exact limits defined: Green v. Milk Control Commission, 340 Pa. 1, 16 A.2d 9 (1940), cert. denied, 312 U. S. 708 (1941). An administrative tribunal cannot be given unlimited or arbitrary discretion, for to do so would result in government of men instead of a government of laws. The legislature may grant tribunals broad discretion in the application of standards, but these standards must be limited in scope by provisions in the statute: Pesognelli Liquor License Case, supra.

We have reviewed the Human Relations Act in detail, including the declaration of legislative policy contained therein. We conclude that the requirements imposed upon appellants by paragraphs B-5 and B-6 of the commission's final order are arbitrary, burdensome, unreasonable and beyond the power and authority of the commission as granted in the act. There is nothing in the record to sustain the commission's assertion that they are needed to redress the grievance in this case. The remaining eight sanctions contained in the commission's final order are more than adequate to rectify the matter as to the Perrys and permit the commission to determine whether appellants are hereafter in compliance with the act. We sustain appellants' exception to paragraphs B-5 and B-6 of the commission's final order.

### ORDER

And now, June 23, 1970, appellants' exceptions (a), (b), (c) and (d) to the final order of the commission are overruled and exception (e) is sustained.

The final order of the commission dated June 9, 1969, is herewith modified by striking paragraphs B-5 and B-6 therefrom. As so modified, said order is sustained.