## Alto-Reste Park Cemetery Association *v.* Pennsylvania Human Relations Commission.

Argued September 7, 1972, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER and ROGERS. Judge BLATT did not participate.

*Robert J. Woodside,* with him *Shearer, Mette, Hoerner & Woodside, James W. Nelson,* and *Nelson, Campbell & Levine,* for appellant.

*Robert S. Englesberg,* Assistant General Counsel, with him *J. Shane Creamer,* Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., December 11, 1972:

Alto-Reste Park Cemetery Association (Alto-Reste) appeals an Amended Final Order of the Pennsylvania Human Relations Commission (Commission) dated March 20, 1972 which directed Alto-Reste to take affirmative action in redress of certain violations of the Pennsylvania Human Relations Act, Act of October 27, 1955, P. L. 744, §§1 et seq., as amended, 43 P.S. §§951 et seq.

The widow of Doctor George A. Walker, a black dentist, sought to inter his remains in Alto-Reste. Alto-Reste refused citing a restrictive covenant and resisted acknowledgment of the jurisdiction of the Commission arguing that a cemetery was not a "place of public accommodations". Nonetheless, the Commission, in April of 1970, issued a Final Order which directed Alto-Reste to take clearly defined steps to remedy the alleged violation.

In May of 1970, Alto-Reste filed an appeal from that order again contending that the Commission did not have jurisdiction over it because the cemetery was not a "place of public accommodation" and that some provisions of the order exceeded the Commission's delegated authority. The Legislature subsequently amended the act so as to include non-sectarian cemeteries within the jurisdiction of the Commission.[1] Counsel for both parties seeking to terminate litigation then began negotiations which they hoped would result in a compromise order. Eventually they reached an agreement.

After some considerable delay, counsel for Alto-Reste was notified on March 21, 1972 that counsel for the Commission was not authorized to enter into an

---

[1] Alto-Reste, in the present appeal, does not attack in any way the propriety of this amendment.

agreement which would amend the original order and bind the Commission. Also enclosed was the Commission's Amended Final Order which is the subject of this appeal.

Alto-Reste contends (1) that the Commission is bound by the modified agreement reached by counsel, and (2) that several provisions of the Amended Final Order exceed the authority granted to the Commission by the Act.

We hold that the Commission's Amended Final Order must be affirmed with certain modification.

Alto-Reste's first contention that the Commission is bound by the agreement is without merit. We recognize that the policy of the law is to favor the compromise of a disputed claim but it is axiomatic that the plain dictates of a duly enacted statute cannot be ignored. This is so notwithstanding the industry, understanding and good intention of the knowledgeable counsel for the Commission.

Section 6 of the Human Relations Act, *supra*, 43 P.S. §956 establishes the Pennsylvania Human Relations Commission and prescribes the procedure to be followed in performing official business. That section provides in pertinent part: "Six members of the Commission shall constitute a quorum for transacting business, and a majority vote of those present at any meeting shall be sufficient for any official action taken by the Commission." Thus a legislatively prescribed procedure must be followed before any binding, official action of the Commission is effected. Counsel for the Commission may enter into negotiations toward a compromise but he must submit the proposed compromise to the Commission so that it can discharge its prescribed duty. He cannot unilaterally bind the Commission. Were we to countenance such a procedure, it would simply mean that orders of the Commission may

issue which have not been the subject of legislatively ordained deliberation and judgment by it. We hold that the Legislature never intended such a substitution.

In *Commonwealth ex rel. Maurer v. Burns*, 365 Pa. 596, 76 A. 2d 383 (1950) the issue was whether a majority of those entitled to vote is sufficient even though all of those entitled to vote had not received notice of the pending vote. Our Supreme Court there held that notice to *all* of those entitled to vote must be given even though a majority had in fact approved the appointment. In effect, the Court requires full compliance with the procedure notwithstanding the unlikelihood of a change in the result.

Alto-Reste has not shown that there was any actual authority to compromise this claim, nor that there was any ratification by the Commission of the actions of counsel. This Court has held that before any agreement entered into by counsel is deemed to be binding, it must be *clearly* shown that the attorney had the authority to enter into such agreement. *Redevelopment Authority of the City of Philadelphia v. L. & A. Creative Art Studio, Inc.*, 6 Pa. Commonwealth Ct. 326, 294 A. 2d 606 (1972). Appellant's reliance upon the Administrative Code, Act of April 9, 1929, P. L. 177, §§512, 902, 903, 71 P.S. §§192, 292, 293 is misplaced. These sections merely provide for legal aid to the Commission and representation in litigation. *It does not authorize attorneys to substitute their judgment for that of their clients.* Independent agencies rely on counsel, but they are ordained to exercise independent judgments, else they serve no purpose in being.

In the wake of the foregoing, we move to a review of the Amended Final Order to determine if any of the provisions exceed the Commission's delegated authority. In reviewing an order of the State Human Relations Commission we must determine whether there

has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. *Travis v. Department of Public Welfare,* 2 Pa. Commonwealth Ct. 110, 277 A. 2d 171 (1971). Alto-Reste is not alleging a lack of substantial evidence to support the action of the Commission, but it urges us to find that some of the provisions of the order exceed its authority.

Specifically, Alto-Reste objects to the following provisions:

"3. It is hereby ordered that the Respondent, its officers, agents, salesmen and other persons connected therewith shall sign a statement of policy recognizing that they are a place of public accommodations as defined by the Pennsylvania Human Relations Act and agreeing that they shall, in the future, henceforth obey all the provisions of said law, including Section 4(1) and Sections 5(i)(1) and 5(i)(2) thereof.

"4. It is hereby ordered that the Respondents write to Mrs. George A. Walker, widow of the late Dr. George A. Walker, a formal public letter of apology for the grief she has suffered due to the refusal of the Respondents to bury the remains of her late husband in December, 1969. Said letter must meet the approval of the Pennsylvania Human Relations Commission.

"5. Respondent shall also agree to instruct its officers, managers and employees, in writing, to comply with the requirements of this order and that it is the policy of the Alto-Reste Cemetery Park Association to bury any person regardless of his race, creed, color, national origin, ancestry or sex.

"8. The Respondent shall also maintain such records, in writing, as will indicate whether any person is refused burial, and the reason thereof. A copy of said reasons for refusal of burial should be sent both to the family of the person refused and to the Pennsylvania Human Relations Commission.

"10. Respondent shall advertise in the 'Altoona Mirror' that it does not discriminate on the basis of race in the sale of all of its cemetery plots. Such advertisement shall be submitted to the Executive Director of the Pennsylvania Human Relations Commission for his approval prior to its publication. Said advertisement shall be submitted to the Executive Director of the Pennsylvania Human Relations Commission for his approval prior to its publication. Said advertisement shall be published no less than once each week for two consecutive weeks."

Section 9 of the Human Relations Act, 43 P.S. §959 provides the authority for the Commission to issue final orders which may require affirmative action which will effectuate the purposes of the Act.

We hold that the requirements in paragraphs numbered 3 and 5 are reasonable directives which serve the purpose of providing proper redress for the violations committed by Alto-Reste. Paragraph 3 has the additional beneficial effect of providing actual notice to all those in the Alto-Reste operation that it is subject to the anti-discrimination laws.

Paragraph 5 has the effect of making all employees of Alto-Reste aware that it will be the policy of the establishment to provide its services on a non-discriminatory basis. In view of the fact that the prior policy was to the contrary, a legitimate purpose is served in making them aware of the present policy of the cemetery.

Paragraph 4 must be stricken. The Commission in requiring a *formal public* letter of apology went beyond the scope of its delegated authority. Interpretation of the term "formal public letter" is subject to a variety of personal subjective notions. I recognize that the Act allows the Commission to require affirmative action to implement its effectiveness but a requirement

such as we have before us in paragraph 4 could well lead to varied, arbitrary and even oppressive orders under the guise of giving proper effectuation of the purposes of the Act.

Paragraphs 8 and 10 have no legitimate purpose which would effectuate the policy of the Human Relations Act and therefore must be stricken.

Similar clauses were attacked in *Pennsylvania Human Relations Commission v. Brucker,* 93 Dauphin 8 (1970) and stricken by the court because they were beyond the authority of the Commission to impose. The clauses there provided: "B-5. For a period of one year from the date of this Final Order notify the Commission in writing immediately, after any apartment becomes available for rent in any building owned, operated or controlled by said Respondents or either of them whether said building is located in North Wales or elsewhere in the Commonwealth of Pennsylvania. "B-6. Advise the Commission in writing of the name and address of the purchaser or grantee, before conveying title to any apartment building or other commercial housing in Pennsylvania owned, operated or controlled by the Respondents and certify to the Commission in said communication that such purchasers or grantee has been fully informed of the substance of this Final Order." The Court concluded that there was no showing that these clauses were needed to redress the grievance of that case.

In our view, paragraphs 4, 8 and 10 in this appeal serve no purpose in repairing an indignity. They merely exercise a reproach which is not consistent with the purposes of the act, nor consoling to the offended and so we conclude they are unreasonably burdensome and arbitrary and as such are beyond the authority of the Commission and this is so especially in view of the conclusion that there are seven other directives which af-

ford adequate redress for the violation involved. Accordingly, we issue the following

ORDER

AND Now, this 11th day of December, 1972, the Amended Final Order of the Pennsylvania Human Relations Commission dated March 20, 1972 is affirmed with the exceptions of paragraphs 4, 8 and 10 which are hereby stricken.