Marian Straw and Lewis Straw, Appellants, *v.* Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission, Appellee.

Argued June 4, 1973, before Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. President Judge BOWMAN did not participate.

*Walter W. Wilt,* with him *Hepford, Zimmerman & Swartz,* for appellants.

*Sanford Kahn,* General Counsel, with him *Robert Englesberg,* Assistant General Counsel, and *Israel Packel,* Attorney General, for appellee.

OPINION BY JUDGE KRAMER, August 14, 1973:

This is an appeal from a December 20, 1972, final order of the Pennsylvania Human Relations Commission (Commission) ordering Lewis Straw and Marian Straw (Straw) to cease and desist from committing unlawful discriminatory practices as defined in Section 5(h) of the Pennsylvania Human Relations Act, Act of October 27, 1955, P. L. 744, as amended, 43 P.S. §955(h). The Commission also ordered Straw to pay to Deborah Wilson (Wilson) the sum of $3500 for "the mental anguish, humiliation, inconvenience and disruption of normal family life which she experienced . . . ."

From the record, we note the following pertinent facts. Straw is the owner of a small apartment building located in Harrisburg. In response to a newspaper advertisement, Wilson called Straw for the purpose of making an inquiry on her possible leasing of Straw's apartment. Upon learning that Wilson was of the Black race, Straw denied her opportunity to lease the apartment. Wilson thereupon filed a complaint with the Commission charging Straw with committing an unlawful discriminatory practice under the Act. The following day the Commission sent one of its white female investigators to the office of Straw for the purpose of determining whether Straw would lease the apartment to her. The record discloses that Straw had an anonymous phone call advising him of a Commission investigation, and Straw advised the Commission investigator that the apartment was not available for the reason that a deposit had been placed on the apartment by another person. On July 19, 1971, the Commission sent another white female investigator to the office of

Straw for the same purpose. Straw took this second investigator to the apartment for a showing, but stated to her that the apartment was not available because of the deposit.

One of the issues raised by Straw is whether the record of the evidence presented adequately supports the findings of fact and conclusions of law found in the Commission's adjudication. We have carefully read the entire record in this case and conclude that there is sufficient substantial evidence in the record to support the Commission's findings and conclusions that Straw committed a discriminatory act in violation of Section 5(h) of the Act in refusing Wilson the opportunity to lease an apartment.

As stated in the Act (43 P.S. §960), our scope of review is governed by the Administrative Agency Law, Act of June 4, 1945, P. L. 1388, as amended, 71 P.S. §1710.1 et seq., whereby we are to determine whether the Commission's adjudication "is not in accordance with law" or whether "any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence." See also Wilkinsburg School District v. Human Relations Commission, 6 Pa. Commonwealth Ct. 378, 295 A. 2d 609 (1972); Pennsylvania Human Relations Commission v. Chester School District, 209 Pa. Superior Ct. 37, 224 A. 2d 811 (1966).[1] Straw also raises an issue based upon the fact that two days prior to the hearings in this matter, the Commission amended the complaint changing the date upon which the alleged unlawful discriminatory practice took place. The original complaint stated that that date was "7-15-71." The amended complaint alleges that date to be "7-19-72," which later date was stipulated to be in error in that the allegation in the amended complaint should have read "7-19-71." The Commis-

---

[1] Modified, at 427 Pa. 157, 233 A. 2d 290 (1967).

sion concluded that the record would not support a discriminatory act to have occurred on "July 19, 1971" but concluded that there was sufficient evidence in the record to support a discriminatory act on "July 15, 1971." Straw argues that the filing of the amended complaint constituted a withdrawal of the original complaint (*See Fleming v. Strayer,* 367 Pa. 284, 80 A. 2d 786 (1951)). As a result of these facts, Straw contends that the Commission erred in concluding that Straw was in violation on the date mentioned in the original complaint. We have carefully reviewed the record in this case and conclude that Straw was on notice of the incidents that occurred between July 15, 1971 through July 19, 1971, and that he had reasonable notice of the dates of the alleged incident. The incident of which Wilson complains was a continuing one between those two dates. Furthermore, the complaint does not restrict itself to the one date, namely July 19, 1971; rather, the complaint says "on or about" July 19, 1971. This allegation gave reasonable notice to Straw, and the record conclusively indicates that Straw was well aware of the incident about which Wilson complained. Therefore, there is no merit to this contention of Straw.

There is another portion of Straw's argument, however, which does deserve mention. The amended complaint alleges a violation of "section 5(h)(1)" of the Act. The Commission concluded that Straw was in violation of not only Section 5(h)(1), but also of Section 5(h)(6) of the Act. Section 5(h)(1) refers to a person refusing to sell, lease, finance or otherwise to deny or withhold commercial housing from another person because of race, etc. Section 5(h)(6) is entirely different and provides for a violation if any person "make any inquiry, elicit any information, make or keep any record or use any form of application, containing questions or entries concerning race . . ." etc. Due

process of law is equally applicable to administrative agencies as it is to courts of law. *See Brookwood Farms v. Milk Marketing Board*, 8 Pa. Commonwealth Ct. 511, 304 A. 2d 510 (1973). Due process of law requires notice to be given to the respondent so that he may adequately prepare his defense in such cases. Inasmuch as Straw was not put on notice that he was also being charged with the violation of Section 5(h)(6) of the Act, the Commission committed error in concluding that he was also in violation of that section.

The third and final issue raised by Straw is more difficult. In its adjudication, the Commission concluded that Wilson was entitled to "compensation" from Straw "for the mental anguish and humiliation, and for the inconvenience and disruption of normal family life, which she experienced as a direct result of the unlawful refusal to rent to her because of her race." In its order, the Commission ordered the payment of $3500 as compensation. Straw contends that the Commission does not have authority to award such compensation.

We have this date filed contemporaneously herewith an opinion in the case of *Zamantakis v. Pennsylvania Human Relations Commission*, No. 1300 C.D. 1972,[2] wherein we discussed the law applicable to the Commission's lack of authority to award such compensation. All that we said there is equally controlling here. The only real difference is that in this case a $3500 award of compensation to the complainant is substantially higher than the award of compensatory damages in the *Zamantakis* case. In support of its position, the Commission has referred this Court to the law of the State of New Jersey where the statutory language is very similar to the Pennsylvania Human Relations Act. The

---

[2] Also filed simultaneously with this opinion is another related case captioned *St. Andrews Development Company v. Pennsylvania Human Relations Commission*, No. 32 C.D. 1973.

Commission cites the case of *Zahorian v. Russell Fitt Real Estate Agency*, 62 N.J. 399, 301 A. 2d 754 (1973). We note with interest in *Zahorian* that, although the New Jersey Court affirmed the payment of compensatory damages for "actual pain and suffering" in the amount of $750, the court there characterized such award as "minor or incidental." The New Jersey court discounted the argument that such award could become substantial. This case before us proves the lack of concern by the New Jersey Supreme Court to be ill-advised. We are concerned that if the Commission's contention were to be upheld, an administrative agency, not necessarily composed of persons learned in the law, without any published standards or statutory authority, could award substantial compensatory damages without a proper record having been established. By "proper record," we mean a record based upon all of the evidentiary and procedural protections traditionally followed in setting damages in a court of law or equity. We have no reservations whatsoever that the record in this case establishes a clear violation of our Act in refusing to lease, or the opportunity to lease, the apartment to Wilson; but a reading of the record in this case discloses no evidentiary support for the size of the compensation awarded by the Commission. The Commission cites Section 9 of the Act, 43 P.S. §959 as support for its award of compensation. That section in pertinent part reads: "If, upon all the evidence at the hearing, the Commission shall find that a respondent has engaged in or is engaging in any unlawful discriminatory practice as defined in this act, *the Commission* shall state its findings of fact, and *shall issue* and cause to be served on such respondent *an order requiring such respondent* to cease and desist from such unlawful discriminatory practice and *to take such affirmative action* including but not limited to . . . leasing specified

commercial housing upon such equal terms and conditions and with such equal facilities, services and privileges . . . to any person discriminated against or all persons *as, in the judgment of the Commission, will effectuate the purposes of this act. . . ."*

The Commission shall establish rules or practice to govern, expedite and effectuate the foregoing procedure and its own actions thereunder." (Emphasis added.) As we said in *Zamantakis*, the emphasized portions of the above section of the Act do not give, with any specificity, the Commission authority to award compensation or compensatory damages to a complainant. We cannot read into the words "respondent . . . to take such affirmative action," a legislative intent that the respondent may be ordered to pay compensation or compensatory damages.

In summary then, under the provisions of Section 44 of the Administrative Agency Law, 71 P.S. §1710.44, paragraphs 3 and 4 of the Commission's final order, relating to the payment of $3500 as compensation to Wilson, are invalid, and the remaining provisions of the Commission's final order should be affirmed. Therefore, we

### ORDER

AND NOW, this 14th day of August, 1973, it is hereby ordered that paragraphs 3 and 4 of the Final Order of the Pennsylvania Human Relations Commission, dated December 20, 1972, in the above matter are set aside, and the remaining provisions of said Final Order are affirmed.

---

CONCURRING OPINION BY JUDGE BLATT:

I concur in the result herein reached by the majority, subject again to the reservations expressed in my Concurring Opinion in *Zamantakis v. Pennsylvania Human Relations Commission*, 10 Pa. Commonwealth Ct. 107, 308 A. 2d 612 (1973).

DISSENTING OPINION BY JUDGE ROGERS:

I dissent from the court's holding that the Pennsylvania Human Relations Commission may not order the payment of compensatory damages to the victim of an unlawful discriminatory practice as I did in *Zamantakis v. Pennsylvania Human Relations Commission*, 10 Pa. Commonwealth Ct. 107, 308 A. 2d 612 (1973), No. 1300 C.D. 1972. A careful reading of the record convinces me, however, that the amount of this award is excessive and is in fact based upon statements made by Mr. Straw to an undercover agent of the Commission investigating a complaint. We may not agree with the respondent's opinions, but he is entitled to have them and to express them. In any case, they could not have been the occasion of mental distress to the complainant, Deborah Wilson, not having been made in her presence. Therefore, the amount of Three Thousand Five Hundred Dollars ($3500.00) was, in my opinion, excessive for the injuries testified to by the complainant and I would reduce it to the sum of Seven Hundred and Fifty Dollars ($750.00).