George Zamantakis and Bessie Zamantakis, Appellants, *v.* Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission, Appellee.

Argued May 9, 1973, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*J. Stephen Kreglow*, with him *Brose, Poswistilo, LaBarr & Jacobs*, for appellants.

*Sanford Kahn*, General Counsel, with him *Robert Englesberg*, Assistant General Counsel, and *Israel Packel*, Attorney General, for appellee.

Opinion by Judge Kramer, August 14, 1973:

This is an appeal from an Order of the Pennsylvania Human Relations Commission (Commission) dated November 27, 1972, in which George Zamantakis and Bessie Zamantakis, his wife (collectively referred to as Zamantakis) were ordered to cease and desist from committing any unlawful and discriminatory practices as defined in Section 5(h)(1) of the Penn-

sylvania Human Relations Act (hereinafter referred to as the Act), Act of October 27, 1955, P. L. 744, as amended, 43 P.S. §955(h)(1).[1] Zamantakis was also ordered by the Commission to pay to Sylvester Thornton and Willis Thornton[2] (Thorntons) "the sum of $250.00 [each] in order to compensate them for the mental anguish and humiliation which they experienced as a result of the [Zamantakis'] unlawful discriminatory practices."

In appealing to this Court, Zamantakis has presented only the question whether the Commonwealth committed an error of law by going beyond the scope of its statutory authority in awarding compensatory damages to the Thorntons in the stated sums for "mental anguish and humiliation." Zamantakis has not appealed from the findings and conclusions of the Commission that Zamantakis committed an unlawful discriminatory practice in violation of the Act.

The facts are not in dispute. Zamantakis owned and operated an apartment house, and advertised in a local newspaper for the rental of a four-room apartment as follows: "FOLK ST.—4 rooms and bath, air condition-

---

[1] On July 2, 1973, the Pennsylvania Supreme Court filed an opinion in the case of *Alto Reste Park Cemetery Association v. Pennsylvania Human Relations Commission*, 453 Pa. 124, 306 A. 2d 881 (1973), affirming in part and reversing in part an opinion of this Court at 7 Pa. Commonwealth Ct. 203, 298 A. 2d 619 (1972). We have carefully reviewed that Supreme Court opinion and conclude that it is not controlling on the result of this case.

[2] The original complaint and the amended complaint filed with the Commission were signed only by Sylvester Thornton. At the beginning of the hearing, before the Commission, the attorney for the Commission orally moved to amend the complaint so as to include the brother of Sylvester, namely Willis Thornton, as a complainant. Counsel for the Zamantakis did not oppose the adding of Willis Thornton as a complainant. The record, however, discloses that pleadings (complaint) were never physically amended, and no complaint was ever signed or acknowledged by Willis Thornton.

ing, wall-to-wall carpeting, $130 plus utilities. Adults. 252-3836." Without going into any great detail, we need only say that the record supports the Commission's findings that Zamantakis refused to rent the advertised apartment to the Thorntons because of their race and sex. Among the 22 findings of fact by the Commission, No. 17 is pertinent to this Opinion, and it reads as follows: "17. Realizing that they were being denied the opportunity to rent the apartment in question in part at least because of their race, the Thorntons felt humiliated. Mr. Willis Thornton, who had recently returned from Vietnam, was, in fact, quite upset to find that the freedom for which he had fought was being denied him here in the United States." In the Commission's conclusions of law, we find: "3. The Complainants, Sylvester and Willis Thornton, are each entitled to receive compensation from the Respondents for the mental anguish and humiliation which they experienced as the result of the discriminatory treatment inflicted upon them." The two paragraphs of the Commission's Order which are before us read as follows:

"2. That the Respondents, George Zamantakis and Bessie Zamantakis pay to each of the Complainants the sum of $250.00 in order to compensate them for the mental anguish and humiliation which they experienced as a result of the Respondents' unlawful discriminatory practices.

"3. Payment of the above amount shall be paid by the Respondents George Zamantakis and Bessie Zamantakis, within 30 days from the date of this Order with interest to accumulate at the rate of 6 per cent per annum in the event said sum is not paid during this period."

As stated in the Act (43 P.S. §960), our scope of review is governed by the Administrative Agency Law, Act of June 4, 1945, P. L. 1388, as amended, 71 P.S.

§1710.1 et seq., whereby we are to determine whether the Commission's adjudication "is not in accordance with law" or whether "any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence." *See also Wilkinsburg School District v. Human Relations Commission,* 6 Pa. Commonwealth Ct. 378, 295 A. 2d 609 (1972); *Pennsylvania Human Relations Commission v. Chester School District,* 209 Pa. Superior Ct. 37, 224 A. 2d 811 (1966).[3] In view of the fact that Zamantakis has raised only the question of whether the Commission has exceeded its statutory authority in the awarding of compensatory damages, for the purpose of disposition, we need not look to the record to determine whether or not the Commission abused its discretion in its findings of fact.

In support of its contention that it has the statutory power to order compensatory damages, the Commission points to Section 9 of the Act, 43 P.S. §959. That section reads as follows:

"If, upon all the evidence at the hearing, the Commission shall find that a respondent has engaged in or is engaging in any unlawful discriminatory practice as defined in this act, *the Commission* shall state its findings of fact, and *shall issue* and cause to be served on such respondent *an order requiring such respondent* to cease and desist from such unlawful discriminatory practice and *to take such affirmative action* including but not limited to . . . leasing specified commercial housing upon such equal terms and conditions and with such equal facilities, services and privileges . . . to any person discriminated against or all persons *as, in the judgment of the Commission, will effectuate the purposes of this act* . . . .

---

[3] *Modified,* 427 Pa. 157, 233 A. 2d 290 (1967).

"The Commission shall establish rules or practice to govern, expedite and effectuate the foregoing procedure and its own actions thereunder." (Emphasis added.)

The Commission contends that Section 9 authorizes it to take "affirmative action." As we read that section, the Legislature authorized the Commission to order the "respondent . . . to take such affirmative action." We believe that there is a real difference here. If we could find in the statute authority in the Commission to ascertain damages, or even to impose punitive or compensatory damages upon a respondent, then we could uphold the Commission's contention that it could order respondent to pay such damages as affirmative action. However, absent such legislative language or clear intent, the Commission may order a respondent only to take such affirmative action as guided by the statute, e.g., the leasing of an apartment to the complainant upon equal terms and conditions. The missing link in the Commission's argument is the absence of any specific legislative authority to ascertain, and hence to award, damages.

A reading of the declarations of policy found in the Act, 43 P.S. §§952 and 953, indicates that the legislative purpose is to provide and foster equal opportunity for all persons to (among other things) lease an available dwelling place regardless of his or her race, color, religion, creed, ancestry or sex. Also included within the protected class are persons who use guide dogs because of blindness. The Commission's zeal to utilize effective methods of enforcing its orders so as to accomplish the declared policy of this Commonwealth is commendable. The problem, however, is that the Commission, as a regulatory agency, cannot go beyond the powers given it by the Legislature. As the Court said in the case of *Pennsylvania Human Relations Commis-*

*sion v. Brucker,* 93 Dauph. 8, 17, 51 Pa. D. & C. 2d 369, 381 (1970) : "It is well settled that an administrative body such as the Human Relations Commission is exercising powers delegated to it by the Legislature, and that it is limited in its powers to those granted. In re Pesognelli's Restaurant Liquor License, 191 Pa. Super. 320, 156 A. 2d 540 (1959) ; Sanitary Water Board v. Glen Alden Corporation, 83 Dauph. 108 (1964). It is equally well settled that courts should not interfere with the actions of governmental bodies or administrative tribunals in absence of an abuse of power. See Goodman Appeal, 425 Pa. 23, 227 A. 2d 816 (1967). These principles of law are to be applied in reviewing actions of the Human Relations Commission. See Pennsylvania Human Relations Commission v. Chester School District, 85 Dauphin 18, 40 D. & C. 2d 493 (1966), affirmed in 209 Pa. Super. 37, 224 A. 2d 811 (1966), and modified in 427 Pa. 157, 233 A. 2d 290 (1967)." The Court later said : "The Legislature may grant tribunals broad discretion in the application of standards, but these standards must be limited in scope by provisions in the statute. Pesognelli's Liquor Case, supra." 93 Dauph. at 18, 51 Pa. D. & C. 2d at 382.

We fully recognize that our Supreme Court in the cases of *Alto Reste Park Cemetery Association v. Pennsylvania Human Relations Commission,* 453 Pa. 124, 306 A. 2d 881 (1973) and *Pennsylvania Human Relations Commission v. Chester School District,* 427 Pa. 157, 233 A. 2d 290 (1967) laid down the principle that the Commission should be given broad discretionary power to make its orders effective. A careful reading of those cases, however, does not permit us to extend the discretionary power of the Commission beyond that authorized by the Legislature. The *Chester School District* case highlights the problems presented by this case. The deprivation of an equal opportunity to edu-

cation also creates mental anguish in minority students, and the damages could be infinitely greater than the possible damages resulting from a discriminatory refusal of a lease. If the Commission's position is upheld here, could it order a school district to pay hundreds or thousands of dollars in compensatory damages to each of the thousands of minority students in the Chester School District? We can find no such statutory authority.

Our reading of Section 9 of the Act, 43 P.S. §959, leads us to conclude that the Legislature has authorized the Commission to issue a cease and desist order from unlawful discriminatory practices, and also has given it the power to order the culprit to take additional affirmative action on leasing discrimination upon such equal terms and conditions as will permit the Commission to effectuate the purposes of the Act. In carrying out that power, the Commission is directed by that same section of the Act to establish rules to govern, expedite and effectuate its procedure and action. No such rules relating to damages have been disclosed. Nowhere in Section 9 do we find any statutory power in the Commission to order compensatory damages for mental anguish and humiliation as a result of leasing discrimination. Unlike employment discrimination, where Section 9 permits the Commission to reinstate an employe with back pay (a readily and reasonably ascertainable statistic), the statute is silent as to any provision for humiliation and mental anguish compensatory damages (a nebulous ascertainment, at best) in leasing discrimination cases.

In a comparable matter, this Court in the case of *Corder v. Civil Service Commission*, 2 Pa. Commonwealth Ct. 462, 468, 279 A. 2d 368, 371 (1971), stated: "We note in passing that the appellant, in her brief, has requested punitive damages for her 'embarrassment

and heartbreak.' We find no statutory basis for this request and therefore her argument is without merit." Furthermore, this Court recently said in *Alto-Reste Park Cemetery Association v. Pennsylvania Human Relations Commission*, 7 Pa. Commonwealth Ct. 203, 298 A. 2d 619 (1972) : "The Commission in requiring a *formal public* letter of apology went beyond the scope of its delegated authority. Interpretation of the term 'formal public letter' is subject to a variety of personal subjective notions. I recognize that the act allows the Commission to require affirmative action to implement its effectiveness but a requirement such as we have before us in Paragraph 4 could well lead to varied, arbitrary, and even oppressive orders under the guise of giving proper effectuation of the purposes of the Act." (Emphasis in original.) 7 Pa. Commonwealth Ct. at 209-210, 298 A. 2d at 623.

Our holding on Paragraph 4 was affirmed by our Supreme Court in *Alto Reste*, supra, for the reason that the Commission was attempting to achieve ends other than those which can fairly be said to effectuate the purposes of the statute.

The issue of whether the Commission can award compensatory damages is one of first impression in this Commonwealth. In view of this fact, the Commission had laid great stress on the law of other jurisdictions. Our research into the cases the Commission cited permits us to conclude that in Oregon, Massachusetts and New York, there is some statutory authority for the human relations authorities to award damages. Admittedly, the New Jersey statute is similar to ours, and is silent on damages. However, in the case of *Zahorian v. Russell Fitt Real Estate Agency*, 62 N.J. 399, 301 A. 2d 754 (1973), cited by our Commission, the majority opinion refers to "minor or incidental awards" "justified by the evidence." We find the New Jersey re-

sult to be confusing and unacceptable under the Pennsylvania statute.

As we view our role in this case, on this issue, we must determine whether *our* Legislature intended *our* Commission to award compensatory damages for "humiliation and mental anguish." We first note that in the Pennsylvania statute, there is no specific legislative language authorizing the Commission to award such damages. Next, we note that the statutorily provided proceeding is directed to be expeditious and informal, as are most administrative procedures. There are none of the formal trappings, evidentiary protections, and strict procedures of a court of law. In addition, the members of the Commission necessarily need not be trained or learned in the law. As so often happens in an administrative proceeding, the Commission and its employes are the investigators, the prosecutors, the judges and jury. On balance, this results in an unduly heavy force on the side of the proponents of *damages*. Traditionally, damages, in this Commonwealth, have been a matter for courts of law, under an adversary system of justice, and therefore unless the Legislature clearly authorizes the Commission to award damages, we cannot extend to it such authority by judicial fiat, nor can we broaden the scope of the Commission's authority into a full-scale lawsuit. *See* 43 P.S. §960.

Even if one could find statutory authority in the Commission to award such damages, the record in this case does not support the Commission's order. We have carefully read the entire record. We note with interest that the Commission has seized upon one short (nine lines) statement of Willis Thornton, in the record, to the effect that he was "upset" over being refused the rental of the Zamantakis apartment as the basis for its conclusion that *both* Thorntons were entitled to compensatory damages. The words "humilia-

tion" or "mental anguish" are not found anywhere in the record except in the Commission's adjudication. *Sylvester* Thornton did not mention his personal feelings at any place in the record. A reading of the record also discloses an absence of any support for the Commission's determination of the $250 figure. The Commission has not pointed to any statutory or regulatory guidance or standard for such damages. The Commission has not presented any regulatory rule, regulation or standard for reaching its conclusion. We must conclude that the Commission's determination of the $250 figure was arbitrary. If regulatory agencies are permitted to utilize their philosophical and sociological thinking and feeling as the basis for compensatory damages, any time a citizen violates such legislation, only chaos can result. The Commission's standard or basis for a $25, or $250, or $25,000 humiliation or mental anguish is left to one's imagination.[4] Due process of law requires that our citizens be notified and fully advised of what is entailed in a regulatory agency hearing. Under the procedure used by the Commission in this case, a citizen is not afforded any protection during the hearing to permit him to mitigate or defend against the imposition of compensatory damages. The inconsistency of the Commission is highlighted when we notice that in its Finding No. 17, quoted above, only "humiliation" is mentioned, yet in its final order, the

---

[4] Filed simultaneously herewith are two similar cases where the Commission awarded compensation for humiliation, etc. In the case of *Straw v. Pennsylvania Human Relations Commission*, No. 16 C.D. 1973, it awarded $3,500; and in *St. Andrews Development Company v. Pennsylvania Human Relations Commission*, No. 32 C.D. 1973, it awarded $750 to the estate of a deceased complainant (who did not testify) and for which there was no personal representative, and $750 to another claimant. The records of these three cases fail to disclose any distinction or basis for the disparity in the respective awards.

Commission awards compensatory damages also for "mental anguish," which is not supported anywhere in its findings.

In summary then, we conclude that the Commission committed an error of law in awarding compensatory damages to the two Thorntons for humiliation and mental anguish. We therefore

## ORDER

AND NOW, this 14th day of August, 1973, final order of the Pennsylvania Human Relations Commission dated November 27, 1972, in the above matter, Paragraphs 1, 4, 5 and 6 are affirmed, and Paragraphs 2 and 3 are set aside.

---

CONCURRING OPINION BY JUDGE BLATT:

While I concur with the result reached herein by the majority, I cannot agree that the Pennsylvania Human Relations Commission (Commission) lacks any power whatsoever to award compensatory damages to victims of a discriminatory practice which is in violation of the Pennsylvania Human Relations Act, Act of October 27, 1955, P. L. 744, 43 P.S. §951 et seq. As our Supreme Court has recently noted in *Pennsylvania Human Relations Commission v. Alto-Reste Park Cemetery*, 453 Pa. 124, 306 A. 2d 881 (1973), the Legislature has "vested in the Commission, quite properly, maximum flexibility to *remedy* and hopefully eradicate the 'evils' of discrimination. . . . The legislative mandate that the provisions of the Act be 'construed liberally' . . . serves to reinforce this view." (Emphasis added.) 453 Pa. at 134, 306 A. 2d at 887.

The statutory basis upon which I believe that the Commission may assess damages is Section 9 of the Act, 43 P.S. §959. This section provides that, if the Commission should determine that a respondent has engaged

in or is engaging in any unlawful discriminatory practice, it shall order such respondent "to take such affirmative action including but not limited to . . . [several specific courses of action] as, in the judgment of the Commission, will effectuate the purposes of this act. . . ." It seems reasonable to expect that one such affirmative course of action might well be the payment of damages to a complainant who has been harmed by a respondent's unlawful discriminatory action. Indeed, this would appear to be a clearly proper and effective way to effectuate the purposes of the Act and to remedy the "evils" of discrimination.

I believe, for example, that it would be appropriate to award such damages in order to reimburse complainants for out-of-pocket expenses sustained as the result of an unlawful discriminatory practice, as in a case where the complainant lost a day's wages or incurred heavy travel expense to answer an advertisement only to find that the owner would not rent to him for some discriminatory reason. Nor would I rule out the possibility of compensation for mental anguish and humiliation.

I also believe, however, that there are two conditions precedent to the award of any such damages by the Commission: (1) the prior adoption of proper standards by the Commission, and (2) the introduction of substantial evidence that an injury has been suffered for which damages are appropriate. Neither condition, of course, is present in this particular case. Certainly the Commission has not established any intelligible standards regarding the basis on which damages are assessed.[1] And, as the majority has correctly indicated,

---

[1] *See, Straw v. Pennsylvania Human Relations Commission*, 10 Pa. Commonwealth Ct. 99, 308 A. 2d 619 (1973), and *St. Andrews Development Company v. Pennsylvania Human Relations Commission*, 10 Pa. Commonwealth Ct. 123, 308 A. 2d 623 (1973).

there has been no evidence presented that the complainants have suffered a compensable injury as the result of any unlawful discriminatory action of the respondents.

CONCURRING AND DISSENTING OPINION BY JUDGE ROGERS:

I respectfully dissent from the holding of the majority that the Human Relations Commission is not empowered to award compensatory damages to victims of illegal discrimination. Section 9 of the Pennsylvania Human Relations Act empowers the Commission upon a finding of an unlawful discriminatory practice to order the offender "to take such affirmative action *including but not limited to* hiring, reinstatement or upgrading of employes, with or without back pay, admission or restoration to membership in any respondent labor organization, or selling or leasing specified commercial housing upon such equal terms and conditions and with such equal facilities, services and privileges or lending money . . . as, in the judgment of the Commission, will effectuate the purposes of this Act . . . ." Act of October 27, 1955, P. L. 744, 43 P.S. §959. The policy of the Commonwealth sought to be carried out by the Act is, *inter alia,* that of assuring "equal opportunities to all individuals and to safeguard their rights . . . to secure commercial housing regardless of race, color, religious creed, ancestry, sex, . . . or national origin." Section 2 of the Pennsylvania Human Relations Act, 43 P.S. §952.

I can conceive of no affirmative action which the Commission could order which would better effectuate the central purpose of the Act to end racial discrimination than that of directing the violator to pay damages to persons upon whom injuries have been inflicted. With the abandonment of the requirement of physical impact as a precondition to recovery for damages for emotional suffering by *Niederman v. Brodsky,* 436 Pa.

401, 261 A. 2d 84 (1970), the concept of an award for such cause in human relations proceedings standing alone would not be unique. As for the contention that the Commission may make excessive, arbitrary or inconsistent orders in this regard, the same possibility exists with respect to jury verdicts. The simple answer is that such orders of the Commission would be subject to judicial review both as to the sufficiency of the evidence of mental suffering and as to the reasonableness of the amount awarded. In short, I believe that the Legislature has authorized orders of compensatory damages by conferring upon the Commission the power to order the taking of affirmative action to effectuate the purposes of the Act.[1]

The Supreme Court of Pennsylvania has twice instructed that the Commission has been invested with broad discretionary powers. It is my opinion that the award made in this case is consistent with the legislation so construed. *Pennsylvania Human Relations Commission v. Chester School District*, 427 Pa. 157, 233 A. 2d 290 (1967); *Alto-Reste Park Cemetery Association v. Pennsylvania Human Relations Commission*, 453 Pa. 124, 306 A. 2d 881 (1973).

In the instant case, however, as the majority observes, there is no evidence whatsoever of the effect of respondent's conduct upon Sylvester Thornton. I agree, therefore, that the order with respect to the payment of damages to him is not supported by the record. I would affirm the order requiring the payment of the modest sum of Two Hundred and Fifty Dollars ($250.00) to Willis Thornton for the mental distress caused him by the respondent's unlawful conduct.

---

[1] Additional reasons for my conclusion are fully expressed and expounded in the court's opinion in *Zahorian v. Russell Fitt Real Estate Agency*, 62 N.J. 399, 301 A. 2d 754 (1973). The New Jersey statute is pertinently identical to the Pennsylvania Human Relations Act.