Stephen Speare and Van Buren Homes, Inc., Appellants, *v.* Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission, Appellee.

Argued September 4, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Josph M. Stanichak,* for appellants.

*Mark A. Senick,* with him *Sanford Kahn,* General Counsel, for appellee.

OPINION BY JUDGE MENCER, December 4, 1974:

This is an appeal from a November 8, 1973 final order of the Pennsylvania Human Relations Commission (Commission) directing Van Buren Homes, Inc., (Van Buren) and Stephen Speare, President of Van Buren, to cease unlawful discriminatory practices as defined in Section 5(h) of the Pennsylvania Human Relations Act, Act of October 27, 1955, P. L. 744, *as amended,* 43 P.S. §955(h). The Commission also ordered Van Buren and Speare to maintain, for a period of two years, a file of all applications submitted to them, including an indication of the race of the applicant.

The crux of the complaint filed by the Commission was that Van Buren, in its placement of nonwhite housing applicants, limited the applicants to two streets in the Van Buren housing complex. At the public hearing on June 18, 1973, the Commission was permitted to amend the wording of the complaint from "nonwhite housing applicants" to "black housing applicants." The two streets in question are physically separated from the other portion of the housing complex by a stream.

One of the issues raised here by Van Buren is whether the record of the evidence presented adequately supports the findings of fact and conclusions of law made in the Commission's decision. Our reading of the record results in our concluding that there is sufficient substantial evidence to support the Commission's findings and conclusions that Van Buren committed a discriminatory act in violation of Section 5(h) of the Act in limiting black applicants to Streets "L" and "M" of the Van Buren housing complex.

William Sallis, a black resident of "L" Street, testified that during his four years as a part-time painter for Van Buren he never saw a black family on any other street than "L" and "M." He also testified that Stephen Speare, President of the Board of Van Buren, stated, in speaking about restricting blacks to "L" and "M" Streets, that "the majority of the people wanted it that way. . . . That's the way it is and that's the way it's going to stay." Shirley Moxley, another black resident of "L" Street, testified that when she applied to Van Buren for an apartment and checked to see the state of her application, Van Buren's agent asked her her race and, in response to her answer of "Negro," stated, "You're restricted to two streets, L Street and M Street . . . [a]nd at the present time we have no openings." She further testified that she was told that there were no apartments available other than on "L"

or "M" Street, when she was finally offered one, but that she personally found six empty apartments in her check of the development, which Van Buren's agent maintained were being used for storage. David Dorsey, Jr., an investigator for the Commission, testified that Tilford Carpenter, Van Buren's agent, told him that "in so far as Negroes are concerned·. . . 'We put people where we think they'll fit in. . . . If we put Negroes on any street other than L Street and M Street, white occupants would move out.' "

Van Buren also raises an issue based on the contention that it was placed at an unfair disadvantage by the Commission's amending the complaint on the day of the hearing to read "black" applicants instead of "non-white" applicants. Section 9 of the Pennsylvania Human Relations Act, *as amended,* 43 P.S. §959, specifically provides that "[t]he Commission or the complainant shall have the power reasonably and fairly to amend any complaint. . . ." As we stated in *Pittsburgh Press Employment Advertising Discrimination Appeal,* 4 Pa. Commonwealth Ct. 448, 457, 287 A. 2d 161, 166 (1972), 413 U.S. 376, reh. den. 414 U.S. 881 (1973), "due process of law is afforded when (1) the 'accused' is informed with reasonable certainty of the nature of the accusation lodged against him, (2) he has timely notice and opportunity to answer these charges and to defend against attempted proof of such accusation, and (3) the proceedings are conducted in a fair and impartial manner." Here we view the challenged amendment of the classification of applicants from "non-white" to "black" as not offensive to the requirement of due process. The classification "non-white" is broader than the classification "black." Van Buren being confronted at the hearing with a narrowing of the charge asserted in the complaint, had sufficient definite warning as to the nature of the placement practice about which the Commission complained.

Therefore, there is no merit to this contention of Van Buren. *See Straw v. Pennsylvania Human Relations Commission,* 10 Pa. Commonwealth Ct. 99, 308 A. 2d 619 (1973).

Van Buren contends that, since it has blacks living in its housing development, it cannot be found to be discriminating in violation of the Pennsylvania Human Relations Act. We answered that contention in *Chester Housing Authority v. Human Relations Commission,* 9 Pa. Commonwealth Ct. 415, 305 A. 2d 751 (1973), when we stated:

"Appellant suggests that unless there is a complete refusal to rent to a black there can be no violation of the Act. Let us examine appellant's rationalization. When a black person is told by [Chester Housing Authority] that there is no apartment space available when in fact there is space available at the white project, at that precise moment there is a *refusal* to rent because of the race of the prospective occupant, which specifically defies Section 5 of the Human Relations Act. To say as appellant does, that a later offer of space to the same black person within the black housing project when and if it becomes available erases the racial discrimination initially practiced is to clothe this Court with naivete which we are unwilling to accept. Moreover, acceptance of appellant's tight interpretation of the term 'refuse to lease' would also cause us to decimate the legislature's obvious pronouncement that the provisions of the Pennsylvania Human Relations Act '. . . shall be construed liberally for the accomplishment of the purposes thereof. . . .' 43 P.S. §962(a).

"Also and very simply, we feel that denying blacks the opportunity to rent apartments in the white housing projects fits squarely within §5(h)(1) which prohibits 'withhold[ing] commercial housing because of

the race' of any prospective owner (tenant or occupant)." 9 Pa. Commonwealth Ct. at 421-22, 305 A. 2d at 754-55 (emphasis in original).

Likewise, Van Buren's assertion that it is not engaged in commercial housing is without merit and flies directly in the face of the definitional section of the Pennsylvania Human Relations Act. Section 4(j), *as amended,* 43 P.S. §954(j), defines the term "commercial housing" to mean "housing accommodations held or offered for sale or rent (1) by a real estate broker, salesman or agent, or by any other person pursuant to authorization of the owner; (2) by the owner himself; or (3) by legal representatives. . . ." The evidence of Van Buren's operations in leasing housing units clearly establishes that Van Buren comes within the Act's definitional test.

Finally, Van Buren complains that the Commission's final order is unreasonable and burdensome. Our Supreme Court in *Pennsylvania Human Relations Commission v. Alto-Reste Park Cemetery Association,* 453 Pa. 124, 306 A. 2d 881 (1973), reaffirmed the principle that the Commission should be given broad discretionary power to make its orders effective. We find the Commission's final order to be within such broad discretionary power.

Accordingly, we enter the following

ORDER

AND NOW, this 4th day of December, 1974, the order of the Pennsylvania Human Relations Commission, dated November 8, 1973, pertaining to Van Buren Homes, Inc., and Stephen Speare, President of Van Buren Homes, Inc., is affirmed.