Wilkinsburg School District, et al. *v.* Human Relations Commission, et al.

Argued September 7, 1972, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER and ROGERS. Judge BLATT did not participate.

*Henry G. Beamer, III,* with him *J. Donald Cook* and *Metz, Cook, Hanna & Kelly,* for appellants.

*Mark A. Senick,* Assistant Counsel, Pennsylvania Human Relations Commission, with him *J. Shane Creamer,* Attorney General, for appellees.

OPINION BY PRESIDENT JUDGE BOWMAN, October 11, 1972:

This appeal is from an adjudication of the Pennsylvania Human Relations Commission which concluded that appellants, the Wilkinsburg Borough School District and its superintendent, had unlawfully discriminated against one of its teachers in violation of Section 5(a) of the Pennsylvania Human Relations Act[1] in subjecting said teacher to unfair and unequal terms and conditions of employment on account of her race and to an unlawfully discriminatory method of evaluation. The Commission's action resulted from a complaint filed by Novella J. Nichols, a temporary professional employee of the district employed in the fall of 1969 and whose employment by the district was terminated in May 1971.

After hearing, the Commission issued its adjudication in which it made seventeen findings of fact and five conclusions of law. Appellants contend that a number of the findings of fact and conclusions of law are without any support in the record or are not sup-

---

[1] Act of October 27, 1955, P. L. 744, as amended, 43 P.S. §951 et seq.

ported by substantial evidence. They also argue that the Commission acted arbitrarily and with bias contrary to minimum due process requirements for administrative agencies having quasi judicial powers, and finally that the Commission erred in not giving any weight to certain provisions of the Public School Code of 1949, Act of March 10, 1949, P. L. 30, 24 P.S. §1-101 et seq., concerning approval of curricular and teaching materials as relevant to the activity of Mrs. Nichols which triggered the events leading to her reassignment and subsequent unsatisfactory performance rating.

As this appeal comes before us under the provisions of the Administrative Agency Law[2] pursuant to Section 10 of the Pennsylvania Human Relations Act, our review is to determine whether the adjudication "is in accordance with law" or whether "any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence." As stated in *Pennsylvania Human Relations Commission v. Chester School District*, 209 Pa. Superior Ct. 37, 224 A. 2d 811 (1966), our scope of review is a limited one and the agency will be sustained unless its adjudication was based on facts or conclusions not supported by evidence or unless it has committed clear abuse of discretion, exceeded its power or based its conclusions upon erroneous interpretation of the law.

Consistent with the scope of our review we have carefully considered the record made before the Commission in relation to its findings of fact and conclusions of law.

As several of its crucial findings of fact are either refuted by the record or without any support in the record and others constitute conclusions of law, not fact, upon which its ultimate conclusions of law par-

---

[2] Act of June 4, 1945, P. L. 1388, 71 P.S. §1710.1 et seq.

tially rest, we must set aside the adjudication and final order.

The genesis of this case lies in a personal dispute between two school teachers having common pupils in a grade school with a predominantly black school population. For no reason supported by the record, the Commission attributes to the school district and its superintendent not only responsibility for the attitude and actions of the one school teacher but then proceeds to find bias on the part of the school district and its officials in the action taken to resolve this dispute. In reaching its conclusion the Commission totally ignores open and declared defiance on the part of the other school teacher in performance of the responsibilities assigned to her after the school district officials attempted to solve the problem by assigning both teachers to identical new teaching assignments at different schools.

Novella Nichols, the complainant, a black teacher, was employed as a temporary professional employee by the district at the beginning of the 1969-1970 school year. To become a permanent professional employee, completion of two years of teaching with satisfactory rating is required.

In early March 1971, an incident between complainant and a white teacher occurred involving destruction by the white teacher of several "Black History" booklets brought into her classroom by pupils, which booklets had been prepared and used by Mrs. Nichols in her classroom. Faced with the evident hostility between these two teachers and this incident, the school officials reassigned both of them to different schools as exploratory reading teachers. Both positions were newly created as part of the plan to resolve the problem confronting the district.

Out of this incident and the fact that Mrs. Nichols had prepared and used this booklet in her classroom,

the Commission makes its first two crucial findings of fact. No. 4 finds the district and its officials as being "unaware of or unconcerned with Black History Week" despite the predominantly black population of the school. Obviously one cannot be concerned with a subject of which one is unaware nor can a conclusion of bias logically rest in part upon alternative findings, one of which absolutely precludes even an inference of a state of mind. Furthermore, it is undisputed in the record that the district had initiated a black history program in the school before the arrival of Mrs. Nichols and had not expressed any objection to her use of this privately prepared material in her classroom.

Finding No. 5, after reciting the destruction of copies of the booklet by the white teacher and the ensuing confrontation, characterizes her conduct as inexcusable and declares no apology was offered. This is absolutely refuted by the record, which discloses such an apology being made. Additionally, this finding, if relevant at all, must rest upon the Commission's view that the school district is vicariously responsible for both the attitude and conduct of this teacher, a view which is without any support in the record.

Subsequent events dealing with the new teaching assignments given to both of the involved teachers and Mrs. Nichols' performance of her new duties comprise the majority of the Commission's remaining findings from which it concluded she had been discriminated against in the resultant poor performance rating.

We will not review each of them in detail. Threaded throughout these findings are ones not supported by the record and others which totally ignore Mrs. Nichols' own admissions and the observations of school officials that she refused to perform teaching duties required of her new position and in fact conducted her classes as she saw fit.

Without evidence that other teachers in their re-assignment or in the performance of their assignments were accorded different treatment, the fact that Mrs. Nichols was assigned to a position for which she was not certified and without experience (No. 9); that such an assignment placed her in the antithesis of the typical classroom situation (No. 10); that she was under a great deal of stress in an atypical situation (No. 12); that she did not adjust well (No. 14); and that she enjoyed a rating of good performance in her prior position (No. 15), do not, individually or collectively, constitute substantial evidence from which it could properly be concluded that her ultimate poor performance rating was discriminatory; and this is particularly so when the Commission has chosen to ignore the complainant's own admission that she refused to perform duties assigned to her and conducted her classes in the manner she deemed appropriate.

In our opinion, the majority of the crucial facts found by the Commission to support its conclusions of law that complainant was subjected to unequal terms and conditions of employment and method of evaluation of her performance by reason of race are not supported by substantial evidence. The Commission, therefore, erred in its conclusions. Having so concluded we need not consider the other arguments advanced by appellants.

Accordingly, we enter the following

### Order

Now, October 11, 1972, the appeal of the Wilkinsburg Borough School District and Charles W. Krepps, Jr., Superintendent, is sustained and the final order of the Pennsylvania Human Relations Commission dated March 20, 1972 is hereby set aside.