Tomlinson Agency, Appellant, *v.* Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission, Appellee.

Argued September 6, 1973, before President Judge
BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKIN-
SON, JR., MENCER, ROGERS and BLATT.

*James Victor Voss*, with him *Neely & Voss*, for appellant.

*Mark A. Senick*, Assistant General Counsel, with
him *Sanford Kahn*, General Counsel, and *Israel Packel*,
Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., November 27,
1973:

This is an appeal from an adjudication of the Pennsylvania Human Relations Commission which concluded that the Tomlinson Agency (Appellant) had committed an unlawful discriminatory practice in violation of Section 5(h)(1) of the Pennsylvania Human Relations Act, Act of October 27, 1955, P. L. 744, as amended, 43 P.S. §951 et seq. (Act).

On March 7, 1972, Ralph DeCostro (DeCostro) and Leslie Strader (Strader), both employees of the Penn-

sylvania Human Relations Commission (Commission),[1] entered the office of Appellant seeking information on available rental property. DeCostro appeared at Appellant's office and made the initial inquiry as to available units at the Riverside Village Apartments (Riverside).[2] Joseph Tomlinson, who operates Appellant agency with his wife, his son, and an assistant, informed DeCostro that a two bedroom apartment at Riverside could be had at the monthly rental of $215.00. When he asked if anything else was open, DeCostro was told that there was a one level frame house on California Avenue in Oakmont, Pennsylvania, which was listed at $85.00 per month. Tomlinson then suggested that DeCostro drive by the house. Subsequently Strader came on the scene, asked about Riverside and was given substantially similar information. Strader also asked about other available housing, but no reference was made to the California Avenue property.

This was the evidence presented to the Commission three member panel after a complaint was filed by it averring that Riverside[3] and Appellant violated Section 5(h)(1) of the Act and an Answer thereto denying the allegation was filed by Appellant. On March 6, 1973, the Commission entered its Final Order finding that Appellant had committed a discriminatory act in violation of Section 5(h)(1) of the Act in that it had failed to inform Strader of the availability of the California Avenue property and it therein ordered Appel-

---

[1] Both DeCostro, who is white, and Strader, who is black, are employed by the Commission as "testers." Apparently, one of their functions, working as a team, is to alternately enter apartment complexes and agencies to determine if like information is afforded white and minority applicants.

[2] DeCostro had been referred to Appellant by the Riverside operation.

[3] At the hearing, it was agreed that Riverside Village Apartments would be dropped as Defendants.

lant to take certain remedial steps designed to eliminate this discrimination.

Appellant now comes to us.

We are reminded that review by the Commonwealth Court in the instant case is solely to determine whether the adjudication is in accordance with law or whether any finding of fact made by the agency in support of its adjudication is not sustained by substantial evidence. *Wilkinsburg School District v. Human Relations Commission*, 6 Pa. Commonwealth Ct. 378, 295 A. 2d 609 (1972). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *A. P. Weaver and Sons v. Sanitary Water Board*, 3 Pa. Commonwealth Ct. 499, 284 A. 2d 515 (1971) citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938).

Appellant was charged with and held to be in violation of §5(h)(1) of the Act which provides:

"It shall be an unlawful discriminatory practice . . . (h) for any person to: (1) Refuse to sell, lease, finance *or otherwise to deny or withhold* commercial housing from any person because of the race, color, religious creed, ancestry, sex or national origin of any prospective owner, occupant or user of commercial housing. . . ." (Emphasis supplied.) 43 P.S. §955.

We agree that this legislation was intended to prohibit the withholding of information on housing availability among other reasons because of race, and or color.

So, the real issue here is whether the Commission's findings of fact, especially findings eight, nine, and ten[4] are supported by substantial evidence.

---

[4] These key findings read as follows:

"8. Mr. DeCostro and Mr. Strader did not offer any information regarding their needs as to housing which would cause Mr. Tomlinson to provide different housing information to either of them.

We are aware of the Commission's proper objectives in eagerly pursuing those who practice discrimination through the subtle means of withholding information on available housing from prospective minority tenants. But it is our duty in reviewing the evidence to carefully examine it lest the Commission's zeal results in legally unfounded inferences and conclusions, to the pain and sacrifice of those so accused.

The Commission had before it evidence that Appellant had told the black and the white testers of the future vacancy at Riverside but that it had failed to inform the black tester of the availability of the California Avenue property. From this omission and the finding that there was no perceptible difference in their manner of inquiry, except for their race, the Commission determined that the Appellant had committed an affirmative act of discrimination. This omission without additional supportive evidence is insufficient to sustain the Commission's findings. A case based on patterns, responses to questions and the testimony of additional witnesses may have and probably would have supported the Commission testers' suspicions, but as the record stands now, the Commission would have us agree that any omission on its face is substantial evidence of discrimination.

We must also find the Commission's eight and ninth findings of fact, which in effect state that the only perceptible difference between the DeCostro and Strader inquiries was their color is arbitrary and fanciful. Our review of the record discloses that while DeCostro offered no background information to Appellant, Strader

"9. There was no perceptible difference regarding Mr. DeCostro and Mr. Strader, aside from their race.

"10. Mr. Tomlinson's failure to provide Mr. Strader information regarding the California Avenue property was prompted by considerations of race, there being no other distinguishing factors upon which said failure could reasonably be founded."

informed the Appellant that he was married. This is clearly a perceptible, meaningful difference between the testers, insofar as potential housing needs. Moreover, it is not unlikely that Appellant did not give Strader information on an $85.00 per month living unit because he felt it would not accommodate a married couple. This supposition gains additional credence when one considers that Strader's initial inquiry went to an apartment which rented for $215.00. Absentmindedness, distraction and any number of conceivable human malfunctions can account for the omission and in fairness to both black and white, substantial evidence must be produced to demonstrate that the omission was based solely on the color of anyone's skin.

The evidence in this case will support neither the basic findings of a discriminatory practice nor the ultimate conclusion of a violation of the Human Relations Act and since the Commission has failed to meet its burden, we enter the following

ORDER

AND NOW, this 27th day of November, 1973, the Order of the Pennsylvania Human Relations Commission dated March 6, 1973, is hereby reversed.