Arnold J. Bryan, t/a Waterview Ltd., Partnership, d/b/a Waterview Apartments, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission, Respondent.

Argued March 8, 1979, before Judges CRUMLISH, JR., BLATT and CRAIG, sitting as a panel of three.

*Barry W. Van Rensler*, for appellant.

*James D. Pagliaro*, Assistant General Counsel, with him *Robert Mirin*, General Counsel, for appellee.

OPINION BY JUDGE CRAIG, August 16, 1979:

This appeal is from a final order of the Pennsylvania Human Relations Commission (commission), which concluded that appellant Arnold J. Bryan, general partner in Waterview, a limited partnership, had committed a discriminatory practice in violation of Section 5(h)(1) of the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §955(h)(1), (Act), by withholding housing information on the basis of race. Section 5(h)(1) of the Act provides:

It shall be an unlawful discriminatory practice. . . .

(h) for any person to:

(1) refuse to sell, lease, finance or otherwise to deny or withhold commercial housing from any person because of the race, color, or religious creed, ancestry, sex or national origin of any prospective owner, occupant or user of such commercial housing, . . . .

This Court specifically held in *Tomlinson Agency v. Pennsylvania Human Relations Commission,* 11 Pa. Commonwealth Ct. 227, 312 A.2d 118, that Section 5 (h)(1) of the Act was intended to prohibit the withholding of information on housing availability because of race.

Our review is limited to a determination of whether the commission's adjudication is in accordance with the law and whether the findings of fact supporting its conclusions are based on substantial evidence. *Chester Housing Authority v. Human Relations Commission,* 9 Pa. Commonwealth Ct. 415, 305 A.2d 751 (1973).

The complaint ensued from a housing compliance test which occurred at appellant's business premises on February 3, 1975. The commission found that at 2:05 p.m. on that date, Ms. Lowenstein, a white female investigator, was told by appellant's rental agent, Mrs. Martorana, that a two-bedroom apartment would be available in March at $225 per month plus electricity. Ms. Lowenstein was shown around the rental office which served as a sample two-bedroom apartment. Further, Mrs. Martorana gave Ms. Lowenstein her business card.

At approximately 2:16 p.m. on the same date, Ms. Burke, a black female commission investigator, approached the rental office to inquire if there was a one or two-bedroom apartment available. Mrs. Martorana cursorily advised her that there was nothing available. The record also indicates that Ms. Burke was not invited into the rental office but was held at the partially opened door.

Finally, at 3:30 p.m. on the same day, Mr. Harnick, a white male commission investigator making a like inquiry, was told by Mrs. Martorana that apartment Q-11 (a two-bedroom apartment) was immediately available for $225 per month plus electricity. Mrs.

Martorana gave Mr. Harnick a key to inspect the apartment and a business card.[1]

The complaint charged that the discrepancies in the information given to the testers were based on race.

After attempts at conciliation had failed, a two-day hearing was held before a panel of hearing commissioners. The full commission adopted the findings of fact, conclusions of law and opinion of the hearing panel.

Appellant alleges that four of the commission's findings of fact are not supported by substantial evidence.

First, we agree that the commission's second finding, identifying the business as "Arnold J. Bryan, T/A Waterview Apartments," is incorrect. The commission's records and order should be corrected to read: "Arnold J. Bryan and Bernard Morgan, trading as Waterview Limited Partnership." Apparently, this characterization of the business is not in dispute.

Secondly, the record fully supports the commission's fourth finding that appellant's agent, Mrs. Martorana, began her employment on October 17, 1974.

Next, appellant contends that also unsupported is the commission's eighth finding that:

At approximately 2:16 p.m., February 3, 1975, Eileen Burke, a black female and a Commission investigator, approached Mrs. Martorana's office and inquired if there was a one or two bedroom apartment available.

---

[1] The record indicates that apartment Q-11 became available sometime on the afternoon of February 3, 1975, when it was taken off of the reserve list as a result of a tenant's indication that she was no longer considering moving into it, but would remain at her present location in the complex for the coming year.

Appellant claims that this finding is clearly erroneous because Mrs. Martorana unequivocally testified that she remembered such a visit to her rental office, but that it occurred sometime between 12:15 p.m. and 1:15 p.m. Appellant's claim is that Ms. Burke, the black investigator, actually arrived *before* either of the two white testers visited the rental office and before apartment Q-11 became available for immediate rental.

The commission's finding is supported by substantial evidence. Ms. Burke, a seasoned commission investigator with the experience of many housing tests behind her, testified in detail regarding the chronology of events on February 3, 1975. Further, the Housing Supervisor for the Philadelphia Regional Office of the commission explained that investigators immediately transcribe their experiences onto an official record on the completion of a housing test.

On the other hand, Mrs. Martorana testified that the events of February 3, 1975 were hectic and that a theft which had occurred on the premises in the late morning of that day added to her confusion.

The fundamental issue here is whether the commission properly found, upon substantial evidence, that appellant's agent provided different treatment regarding the availability of rental units and courtesies of the rental office to a black person from that provided to two white persons.

Appellant alleges that the commission erred as a matter of law in finding a violation of the Act because several elements of the violation were not established.

Appellant maintains that the occurrence of a discriminatory act (and therefore a violation) was not shown because testers' manufactured experiences, standing alone, cannot establish the existence of a discriminatory practice. According to appellant, in the words of the Act, there was no denial of information to a "prospective owner, user or occupant."

Also appellant claims that there is no prima facie case where there is no proof that any commercial rental housing was actually available at the time that the black tester was deprived of such information.

The case law clearly establishes that the commission has the burden to prove a violation of Section 5(h)(1). Previous cases also indicate that evidence obtained through a two-tester test, without more, is not the substantial evidence required to carry the burden of proving a violation under the Act. *J. Howard Brandt, Inc. v. Pennsylvania Human Relations Commission*, 15 Pa. Commonwealth Ct. 123, 324 A.2d 840 (1974); *Tomlinson, supra*.

However, there is dictum in *Brandt, supra*, that on a "properly proven set of circumstances" a violation could be established even if factually there was no commercial housing available and the "prospect" was a tester. *Brandt, supra*, at 131, 324 A.2d at 843.

This case is novel in that the commission here employed a three-tester "sandwich test," consisting of a white tester, followed by a black tester and then a second white tester, who separately approached the rental agent and similarly asked for one or two-bedroom apartments.

By sandwiching the black tester's visit between the white testers' visits, the commission ran a cross-check on the information the first white tester received.

Appellant's argument that a commission tester can never present him or herself as a "prospective owner, occupant or user" within the meaning of Section 5(h)(1) is without merit. This Court in *Brandt, supra*, determined that "prospective" must be interpreted to mean prospective in the eyes of the real estate broker or salesman and sanctioned the use of testers to assist the commission in making determinations of whether complaints should be filed.

Further, whether commercial housing was actually available or not is not crucial in this case because both white testers were told of rental availabilities and the black tester was not.

Also, appellant's attempt to explain the discrepant information given to the black tester, on the ground that his agent did not take her request for housing seriously because of her attitude and physical appearance, is contradicted by his agent's own testimony. Mrs. Martorana testified that she did not consider the black tester a "bonafide" apartment seeker. The commission found otherwise, and we agree. Mrs. Martorana's specific testimony completely contradicts the explanation of her treatment of the black tester.[2]

An additional feature of this case is that the record contains statistical analyses of the racial composition of the Waterview Apartments and the area in which they are located.

Appellant's argument, that the introduction of these statistics has altered the commission's case to a "pattern and practice" case, for which they received

---

[2] Cross-examination of Mrs. Martorana:

Q: Do you often judge prospective applicants on the basis of their dress and attittude?

A: No.

Q: Did you ever judge prospective applicants on that basis?

A: No.

Q: Are you more choosy at times with regard to apartment letting than at other times?

A: Let me say this, that just on the sight of the person I don't make an evaluation of whether they are suitable for Waterview.

. . . .

Q: Did Ms. Burke not ask you if there was an apartment?

A: She asked me if I had any apartments available.

Q: What was your response?

A: I said no right at that time.

no notice (in the form of an amended complaint) and were therefore not prepared to defend, is without merit because the statistical analysis, even if germane, is unnecessary for the conclusion.

We find that the commission has set forth a properly proved set of circumstances establishing a violation of Section 5(h)(1) of the Act. The finding of a violation is supported by substantial evidence and comports with the law.

Appellant finally challenges the hearing on procedural due process grounds. Appellant first alleges that because the initiation of the investigation and the issuance of the complaint, prosecution of the charges and the adjudication, were all performed by the commission, the resultant unfair tribunal deprived appellant of a fair trial.

*Bruteyn Appeal*, 32 Pa. Commonwealth Ct. 541, 380 A.2d 497 (1977) is dispositive of this allegation. The court in *Bruteyn Appeal, supra,* determined that the multi-function nature of the State Dental Council and Examining Board in its enforcement proceedings (where the Board served as investigator, complainant and adjudicator), did not render the Board's adjudication invalid *per se.*

The procedures of the commission are within the boundaries of those outlined in *Bruteyn, supra.* The initial investigation conducted by a regional branch office of the commission resulted in the issuance of a complaint and an unsuccessful conciliation effort. Then, the commission, determining that probable cause existed, voted in favor of a public hearing, and proceeded to an adjudication.

Inquiries into probable cause do not raise such an unconstitutionally high risk of bias so as to invalidate *ipso facto* a decision after formal hearing. A finding of actual bias is required. *Bruteyn, supra,* 32 Pa. Commonwealth Ct. at 548, 380 A.2d at 501.

Appellant also questions the fair trial aspects of the proceedings before the commission where the Commonwealth attorney available to advise the hearing panel and the prosecutor were both associated with the same branch of the commission. Appellant contends that this situation has the same unconstitutional effect as a single individual performing both prosecutorial and adjudicatory functions. *See: Dussia v. Barger*, 466 Pa. 152, 351 A.2d 667 (1975).

In *Pennsylvania Human Relations Commission v. Thorp, Reed and Armstrong*, 25 Pa. Commonwealth Ct. 295, 361 A.2d 497 (1976) this Court examined the procedural due process aspects of both prosecutor and hearing body advisor being from the legal department of the commission. Noting that this situation rested "at the interface between a constitutionally permissible and a constitutionally impermissible commingling of prosecutorial and adjudicatory functions" the Court scrutinized the record and found that no actual prejudice had resulted. *Thorp, supra,* 25 Pa. Commonwealth Ct. at 302, 361 A.2d at 501.

Here appellants have been unable to point to any record evidence of actual bias. *Pennsylvania Human Relations Commission v. Feeser,* 469 Pa. 173, 364 A.2d 1324 (1976). Therefore we do not believe that appellant has been denied due process of law.

ORDER

AND Now, this 16th day of August, 1979, the decision (February 27, 1978) and the order (March 13, 1978) of the Pennsylvania Human Relations Commission is affirmed.