Harmony Volunteer Fire Company and Relief Association, Petitioner *v.* Commonwealth of Pennsylvania Human Relations Commission, Respondent. Pamela White Magill, Intervenor.

Argued March 3, 1983, before Judges Rogers, Craig and Doyle, sitting as a panel of three.

*Douglas G. Linn, II, Linn, Atwell & Associates,* for petitioner.

*Michael L. Foreman,* Counsel, with him *Ellen M. Doyle,* Assistant General Counsel, for respondent.

*Rita L. Bernstein,* with her *Susan Cary Nicholas,* for intervenor, Pamela White Magill.

*Phyllis N. Segal,* with her *Judith I. Avner* and *Kim Green,* for intervenor, NOW Legal Defense and Education Fund.

Opinion by Judge Craig, April 26, 1983:

The Harmony Volunteer Fire Company and Relief Association (fire company) appeals from a decision and order of the Pennsylvania Human Rela-

tions Commission, which found that the fire company had violated the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §§951-962.2 (act). After a public hearing, the hearing commissioners concluded that the fire company had rejected the membership application of Pamela White because of her sex, a violation of §5(a) of the Act, 43 P.S. §955(a).[1] The commission also concluded that the fire company had violated §5(d) of the Act, 43 P.S. §955(d),[2] by retaliating against Frederich H. White, a fire company member and Pamela White's father, because of his assistance and support of the complaint she had filed before the commission. The commission adopted the recommendations and conclusions of the hearing commissioners.[3]

The fire company contends here that the commission did not have subject matter jurisdiction because the fire company is not an employer under the act.

---

[1] Section 5(a) provides, in relevant part:
It shall be an unlawful discriminatory practice [f]or an employer because of the . . . sex . . . of any individual to refuse to hire or employ, or to bar or to discharge from employment such individual. . . .

[2] Section 5(d) provides, in relevant part:
It shall be an unlawful discriminatory practice [f]or an employer . . . to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act.

[3] The Commission issued orders requiring that the company (1) cease and desist discrimination against females, (2) take affirmative steps to recruit female firefighters, (3) accept Pamela White as a member, (4) reinstate Frederich H. White as a member, (5) replace a fire phone in Frederich H. White's home, (6) refrain from retaliating against the complainants and anyone who testified in the case, and (7) report its manner of compliance to the Commission within thirty days.

The company also argues that the record does not contain substantial evidence to support the commission's decision.

We must affirm an adjudication of an administrative agency unless the agency violated constitutional rights, made findings of fact not supported by substantial evidence or committed an error of law.[4] Following that standard, we must reject the fire company's contentions and affirm the order of the commission.

## 1. Factual Background

The fire company is a nonprofit corporation which voluntarily provides fire protection and emergency ambulance and rescue services for the Borough of Harmony, Pennsylvania. When Pamela White applied for membership, the constitution of the fire company, which provided the criteria for eligibility, required that firefighters be: (1) male, (2) eighteen or older, and (3) a resident of the territory which the company served.[5]

In order to become a member, an interested person obtained an application from a member, completed the form and returned it to the company. An investigating committee of three members interviewed the applicant, and, if they approved him, signed the application and returned it to an officer. When the committee members knew the applicant well it was not unusual for them to forego the interview and merely sign the application.

At the next monthly meeting of the company, a member presented the completed application to those

---

[4] 2 Pa. C. S. §704; *Pennsylvania Human Relations Commission v. Feeser*, 469 Pa. 173, 364 A.2d 1324 (1976).

[5] Evidence indicated that the fire company has since amended its constitution and by-laws and admitted a female member.

assembled. The company took no further action until the following month, when those present voted secretly on whether to accept the applicant as a member. The rejection rate of the company was extremely low. However, at the time of Pamela White's application, no woman had ever become a member of the fire company.

Pamela White, an adult female resident of the Borough of Harmony, applied for membership in the fire company in January of 1979, by completing an application form and delivering it to her father, Frederich H. White, a member of the fire company. At that time Pamela White was certified as an Emergency Medical Technician.

At its February meeting, the fire company voted to reject Pamela White's application, and she filed a complaint with the commission on March 16, 1979, alleging a violation of the Human Relations Act. In April, Tim Sapienza, the fire chief, ordered the emergency fire phone removed from Frederich White's residence. The following month Frederich White attended a commission conference on his daughter's complaint, and at the May meeting he resigned from the fire company in order to avoid expulsion. Frederich White then filed a second complaint with the Human Relations Commission.

## 2. Jurisdiction

The subject matter jurisdiction issue was the primary focus of both the briefs and the arguments before this court. The act provides, in relevant part:

The term "employer" includes the Commonwealth or any political subdivision . . . thereof and any person employing four or more persons within the Commonwealth. . . . The term "employer" with respect to discriminatory prac-

tices based on . . . sex . . . includes, religious, fraternal, charitable and sectarian corporations and associations employing four or more persons. . . .[6]

The act does not define employment; therefore, we rely, as did the commission, upon common law concepts as to master-servant status.

In a 1906 case, our Supreme Court discussed the standard which is still in effect. " 'The relation of master and servant exists where the employer has the right to select the employee, the power to remove and discharge him, and the right to direct both what work shall be done, and the way and manner in which it shall be done.' "[7] The employer's power to control the nature and the parameters of the employee's activities is the key to the relationship. Although the duty to pay a salary is often coincident with the status of employer, it is not an absolute prerequisite.[8]

The fire company, through its membership process, selects its own firefighters. It has the power to discharge them for non-performance of their duties, and it directs both the work they do and the manner in which they perform that work. The company also provides a good measure of training for its firefighters in such relevant fields as first aid, emergency medical procedures and firefighting techniques.

---

[6] Section 4(b) of the Act, 43 P.S. §954(b).

[7] *McColligan v. Pennsylvania Railroad Company*, 214 Pa. 229, 63 A. 792 (1906), quoting 20 Am. & Eng. Ency. of Law (2d Ed.), pp. 11, 12. *See also Sweet v. Pennsylvania Labor Relations Board*, 457 Pa. 456, 322 A.2d 362 (1974); *Rodgers v. Washington County Institution District*, 349 Pa. 357, 37 A.2d 610 (1944); *Jones v. Unemployment Compensation Board of Review*, 163 Pa. Superior Ct. 271, 60 A.2d 568 (1948).

[8] *Sweet v. Pennsylvania Labor Relations Board*, 457 Pa. 456, 322 A.2d 362 (1974); *Rodgers v. Washington County Institution District*, 349 Pa. 357, 37 A.2d 610 (1944).

The commission concluded, and we agree, that, in view of the extensive control which the fire company exercises over its members, it is an employer for purposes of the Human Relations Act.

Both the nature of the work which the fire company performs and the pervasiveness of governmental involvement in the company's activities reinforce our conclusion.

In its argument that fire protection is not a traditional governmental function, the fire company relies heavily upon the district court's discussion of the state action issue in *Janusaitis v. Middlebury Volunteer Fire Department*, 464 F. Supp. 288 (D. Conn. 1979). Although many of the considerations involved in the present case are also a part of a state action determination, the company's presentation of that case in its brief is inaccurate, and its reliance upon it is misplaced. The district court indeed refused to hold that the volunteer fire company in that case was involved in state action, but the court of appeals went to some length to explain its rejection of the district court's position. That court specifically stated "[f]ire protection is a function public or governmental in nature . . . which would have to be performed by the Government but for the activities of volunteer fire departments."[9]

We concur with that statement and with the position of the commission that the fire company's primary function, the provision of fire and emergency services, is governmental in nature.

Numerous legislative enactments further interweave the functioning of the government and the fire

[9] *Janusaitis v. Middlebury Volunteer Fire Department*, 607 F.2d 17, 24 (2d Cir. 1979), quoting *Perez v. Sugarman*, 499 F.2d 761, 765 (2d Cir. 1974).

company. Several statutes provide the fire company with particular benefits and powers: volunteer fire-fighters may become special fire police with full power to regulate traffic, control crowds and exercise all other police powers necessary to facilitate the fire company's work at a fire or any other emergency;[10] volunteer fire associations are exempt from vehicle title and registration fees;[11] and fire companies are eligible for low interest state loans in order to purchase equipment.[12] Other statutes also recognize the intimate relationship between a volunteer fire company and governmental entities; the borough is liable for the negligent operation of equipment by a volunteer firefighter responding to an emergency;[13] an employer may not terminate a volunteer firefighter for missing work while responding to a fire call;[14] firefighters are government employees under the workmen's compensation act;[15] firefighter relief associations are entitled to receive a two percent tax on all foreign fire insurance premiums;[16] the borough may make regulations for fire safety[17] and may make appropriations to volunteer fire companies;[18] the

[10] Section 1 of the Act of June 18, 1941, P.L. 137, *as amended*, 35 P.S. §1201.

[11] 75 Pa. C. S. §1901(b)(2).

[12] Section 1 of the Act of July 15, 1976, P.L. 1036, 72 P.S. §3943.1.

[13] 75 Pa. C. S. §1576.

[14] Section 1 of the Act of December 1, 1977, P.L. 249, 43 P.S. §1201.

[15] Section 601 of the Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §1031.

[16] Section 2 of the Act of June 28, 1895, P.L. 408, *as amended*, 72 P.S. §2262.

[17] Section 1202 of the Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. 46202.

[18] Section 1302 of the Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. 46302.

state may regulate relief companies;[19] and the fire station is exempt from property taxes.[20]

## 3. Liability

In its brief, the fire company detailed the justifications it had offered to the commission for its actions. The following discussion presents the evidence surrounding each of the company's contentions.

The company argues that it did not actually enforce its constitutional prohibition of female members. At the time of Pamela White's application, the fire company had never had a female member, and no one moved to suspend the gender limitation in the constitution when the company voted on her application.

The company also contends, and there was testimony to suggest, that some of the members voted to reject Pamela White because they were upset with Frederich White, who had moved that the company vote upon her application without the usual one-month delay. Frederich White testified that he made that motion because the fire company was in need of Emergency Medical Technicians, and Pamela had already completed her training and received her E.M.T. certification. Evidence also indicated that, on several earlier occasions, Frederich White had made the same motion, and the company had accepted each of those applications.

Finally, the fire company contends that the evidence showed that Pamela White had, through her father, placed unacceptable conditions upon her membership, specifically that she had refused to fight fires and had been willing to do only ambulance work. Both Pamela White and Frederich White testified.

---

[19] Section 1 of the Act of June 11, 1968, P.L. 149, 53 P.S. §8501.

[20] Section 202 of the Act of May 21, 1943, P.L. 571, *as amended*, 72 P.S. 5453.202.

that they had placed no such limitations on her application.

With respect to Frederich White's complaint, the fire company contends that evidence showed that the chief had ordered the fire phone removed from Frederich White's home because of complaints about his family's use of the phone, and because Frederich White had been involved in an "altercation" with the fire chief. However, the record was absolutely clear that the fire chief ordered the phone removed before the fighting incident occurred. Other testimony indicated that no one had ever complained about the family's use of the fire phone during the several years it had been in their home.

The fire company admits that Frederich White's resignation constituted a constructive discharge, but contends that the ouster was not based on his involvement with his daughter's complaint before the commission. The company argues that many of the members were upset about the suspension of the one-month waiting period which Frederich White had proposed at the February meeting, and that Frederich White was a discipline problem because he caused difficulties on fire calls and had fought with the fire chief.

As mentioned above, the fire company had previously suspended the waiting period without adverse effect on the applications. The evidence indicated that Frederich White had been in the fire company for a number of years and that, during that time, he had held many elected positions, including line officer and fire chief. Other testimony indicated that, because of a health problem, Frederich White no longer was able to fight fires, and that the altercation with the fire chief was largely a name-calling incident, which ended with the chief striking Frederich

White. The fire company took no disciplinary action against the chief, despite the fact that he was younger, had been the aggressor, and had pleaded guilty to charges arising from the incident.

In their recommendation to the commission, the hearing commissioners made extensive findings of fact—which the commission adopted—well supported by complete citations to the stipulations of parties, the exhibits introduced at the hearing and the transcript of the testimony.

Questions of the weight of the evidence and the credibility of the witnesses were for the commission.[21] We have carefully reviewed the voluminous record in this case, and we are satisfied that each of the commission's findings are well founded and supported by sufficient credible evidence. The commission considered and rejected each of the company's justifications, and we may not now reevaluate their merit.

Based on those findings, the commission determined that both Pamela White and Frederich White had established a prima facie case of discrimination under the act. Because the commission rejected the company's proffered justifications, it concluded that the fire company had violated the act by rejecting Pamela White's membership because of her sex, and by retaliating against Frederich White by removing his fire phone and constructively discharging him from the fire company.

As we observed in *Saint Andrews Development Co. v. Pennsylvania Human Relations Commission*, 10 Pa. Commonwealth Ct. 123, 308 A.2d 623 (1973), aff'd 478 Pa. 567, 387 A.2d 467 (1978), "in human relations cases it is rare for the respondent to have made positive statements or to have performed patent

---

[21] *Pawk v. Department of Environmental Resources*, 39 Pa. Commonwealth Ct. 457, 395 A.2d 692 (1978).

acts of discrimination; and therefore, many cases must be resolved by findings of discrimination based upon inferences and circumstantial evidence'' 10 Pa. Commonwealth Ct. at 130, 308 A.2d at 626.

The commission's findings of fact fully and adequately support its legal conclusions and, accordingly, we affirm the decision and order.

### Order

Now, April 26, 1983, the order and decision of the Pennsylvania Human Relations Commission, No. E-15558, *as amended,* and No. E-15989, *as amended,* dated June 29, 1981, is affirmed.