## Barrick v. Upper Frankford Twp. Volunteer Fire Co.

*Marcus A. McKnight, III,* for plaintiff.
*James D. Flower, Jr.,* for defendant.

### STATEMENT OF ISSUES AND FACTS

BAYLEY, *J.,* April 10, 1985—The Upper Frankford Township Volunteer Fire Company was incorporated on a non-profit basis in February, 1950. The company, under contract, provides fire protection for three Cumberland County Townships: Upper Frankford Township, Lower Frankford Township and Lower Mifflin Township.

The fire company operates under a set of by-laws that govern various types of memberships. Plaintiff, Robert Barrick, has been an active member of the company since 1972. In December of 1981 he became a life member.

The company's by-laws provide in Article 13:

"Any member whose actions are deemed inappropriate or defames the fire company shall be referred (sic) to the Board of Directors for appropriate (sic) action. The member may be expelled from the fire company if the Board feels this is the necessary course of action."

Without any notice of charges or an ability of plaintiff to respond, the board of directors of the fire

company expelled plaintiff on July 9, 1984 for conduct it deemed inappropriate in accordance with Article 13 of the by-laws.

Prior to plaintiff's expulsion the board of directors had limited the number of keys to the company's fire station to fourteen officers and two other firemen it deemed appropriate. Although plaintiff had previously served in various capacities as an officer of the company he was not then an officer and not one of those who was issued a key. He continued to respond to fires even though officers of the company were making it difficult for him to do so. Following his expulsion he brought this suit in equity seeking to restrain the company from interfering with his claimed rights as a member of the company and further seeking an order requiring the company to provide him a key to the fire station.

A hearing was held on plaintiff's request for a preliminary injunction, which was denied. We then held a non-jury trial supplementing the record made at the earlier hearing which both counsel stipulated would be considered part of the overall record for a determination of the issues in this case. The matter is now ready for decision.

The threshold question is whether, in light of the function performed by the Upper Frankford Township Volunteer Fire Company, its actions constitute "state action." Both parties agree that if the conduct of expelling plaintiff from the fire company constitutes state action plaintiff was not provided due process as required by the restraints of the United States Constitution through the Fourteenth Amendment. The essential requirements of due process are notice and an opportunity to respond. Cleveland Board of Education v. Loudermill, et al., 53 U.S.L.W. 4306 (U.S. March 19, 1985).

## DISCUSSION AND CONCLUSION

A typical fire protection agreement made part of this record between the Upper Frankford Township Volunteer Fire Company and Lower Mifflin Township, provides that the township is responsible for the health, safety and welfare of its residents and is empowered by the legislature to enter into contracts to provide for fire protection services and appropriate funds therefor. The Upper Frankford Township Volunteer Fire Company receives direct funding from the three townships it serves. Workmen's compensation coverage is provided by Upper Frankford Township with that township being reimbursed by the other two townships on a pro-rata basis. The company has a state low interest loan made available to all fire companies throughout the Commonwealth in order to finance equipment.

As noted in Harmony Vol. Fire Co. v. Pa. H. R. Comm., 73 Pa. Commw. 596, 459 A.2d 439 (1983), "[n]umerous legislative enactments further interweave the functioning of the government and the fire company." In that case, where the Commonwealth Court concluded that a fire company in the Borough of Harmony, Pennsylvania was an employer for the purposes of the Pennsylvania Human Relations Act, this interweaving of functions was outlined as follows:

"Several statutes provide the fire company with particular benefits and powers: volunteer firefighters may become special fire police with full power to regulate traffic, control crowds and exercise all other police powers necessary to facilitate the fire company's work at a fire or any other emergency [Section 1 of the Act of June 18, 1941, P.L. 137, as amended, 35 P.S. §1201]; volunteer fire as-

sociations are exempt from vehicle title and registration fees [75 Pa.C.S. §1901(b)(2)]; and fire companies are eligible for low interest state loans in order to purchase equipment [Section 1 of the Act of July 15, 1976, P.L. 1036, 72 P.S. §3943.1]. Other statutes also recognize the intimate relationship between a volunteer fire company and governmental entities; the borough is liable for the negligent operation of equipment by a volunteer firefighter responding to an emergency [75 Pa.C.S. §1576]; an employer may not terminate a volunteer firefighter for missing work while responding to a fire call [Section 1 of the Act of December 1, 1977, P.L. 249, 43 P.S. §1201]; firefighters are government employees under the workmen's compensation act [Section 001 of the Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §1031]; firefighter relief associations are entitled to receive a two percent tax on all foreign fire insurance premiums [Section 2 of the Act of June 28, 1985, P.L. 408, as amended, 72 P.S. §2262]; the borough may make regulations for fire safety [Section 1202 of the Act of February 1, 1966, P.L. (1965) 1656, as amended, 53 P.S. 46202]; and may make appropriations to volunteer fire companies [Section 1302 of the Act of February 1, 1966, P.L. (1965) 1656, as amended, 53 P.S. 46302]; the state may regulate relief companies [Section 1 of the Act of June 11, 1968, P.L. 149, 53 P.S. §8501]; and the fire station is exempt from property taxes. [Section 202 of the Act of May 21, 1943, P.L. 571, as amended, 72 P.S. 5153.202].

The Commonwealth Court concluded that a "fire company's primary *function*, the provision of fire and emergency services, is governmental in nature." (Emphasis added). It quoted with approval the United State Court of Appeals in Janusaitis v.

Middlebury Volunteer Fire Department, 607 F.2d 17 (2d Cir. 1979), which specifically stated:

"[f]ire protection is a function public or governmental in nature . . . which would have to be performed by the Government but for the activities of volunteer fire departments."

The Janusaitis court thoroughly reviewed the legal tests used to support their holding that fire protection is a function which the government would otherwise have to perform if state law did not allow for the contracting of the services. We agree with that analysis and are not willing to conclude, as defendant urges, that the Court of Appeals misconstrued the United State Supreme Court's decision in Flagg Bros. Inc. v. Brooks, 436 U.S. 149, 98 S.Ct. 1719, 56 L.Ed. 2d 185 (1978).

In Janusaitis, which involved the dismissal of a fire chief, the court's holding was grounded on a function of government analysis. A review of the laws of Pennsylvania relating to fire companies and fire protection, as previously set forth, and the facts of this case, warrant a similar conclusion. Fire protection is a function governmental in nature which would have to be performed by the government absent its lawful ability to contract for those services. Accordingly, we conclude that the Upper Frankford Township Volunteer Fire Company denied the minimal requirements of procedural due process to the plaintiff in dismissing him without notice of allegations or the ability to respond to them. He is therefore entitled to an order restraining the fire company from interfering with his rights as a member of that company.

It does not, however, follow that plaintiff is entitled to an order directing the company to furnish him a key to the fire station. The evidence is that prior to 1984 the company was suffering theft losses

of money and personal property. The company tried to keep the matter low keyed in order to catch the thief but the incidents continued. Finally, in February, 1984, the company changed the locks on its fire station and limited keys to 14 officers, the self-contained breathing apparatus technician and another member who is a farmer who lives one mile away from the station and is often the first person to arrive after an alarm. The thefts then ended.

Plaintiff, a qualified driver, did not receive a key to the station although he has never been suspected or accused of taking anything from the building. He complains that his lack of a key is detrimental to public safety. In effect, he asks this court to supersede the judgment of the board of directors of the fire company and involve ourselves in the operational aspects of its day to day functioning. We are not about to do so where there is no legal basis for the requested relief. The matter should properly be addressed to the townships who contract with the company for fire protection. If they are dissatisfied in the manner in which the company is fulfilling its obligation to protect the public they can intervene or change or altar their contracts with the company when they come up for renewal. We have neither the expertise not the inclination to make the practical decisions of how a fire company should operate; who gets keys to the station; how equipment is dispatched; who operates it; or the many and other varied aspects of providing fire protection services.

For the foregoing reasons, the following is entered.

## DECREE NISI

And now, this April 10, 1985, it is ordered, adjudged and decreed:

(a) The Upper Frankford Township Volunteer Fire Company is enjoined from denying plaintiff membership in said company on the basis of its expulsion directive dated July 9, 1984;

(b) Each party shall bear its own costs and fees in this proceeding.

The prothonotary is directed to enter this decree nisi and send a copy of this opinion and order to the parties' counsel by regular mail. If no exceptions are filed by any party to this order within ten days after the entry thereof, it shall be entered by the prothonotary as a final decree.