## Zeigler v. Borough of Carlisle

438

*David J. Spotts,* for plaintiff.
*Edward L. Schorpp,* for defendant.

BAYLEY, *J.,* December 1, 1995—Plaintiff, Daniel L. Zeigler, age 35, filed a claim with the Borough of

Carlisle seeking benefits for a heart ailment pursuant to what is known as the Heart and Lung Act. 53 P.S. §§637, 638. The claim was denied. Plaintiff appealed and had a local agency hearing before borough council on January 30, 1995. Council denied the claim based on the following conclusions of law:

"Zeigler's full rate of salary is not fixed by ordinance or resolution, and therefore Zeigler is not entitled to benefits under the Heart & Lung Act.

"The borough did not have the right to exercise the requisite degree of control over Zeigler to establish an employer-employee relationship.

"The Borough of Carlisle did not, in actuality, exercise the requisite degree of control over Zeigler to constitute an employer-employee relationship.

"Zeigler was properly denied heart and lung benefits because the necessary employment relationship with the Borough of Carlisle is lacking."

Plaintiff appealed to this court pursuant to 2 Pa.C.S. §752. Briefs were filed and argument was held on October 23. The record, which includes a transcript of the hearing and a written decision of borough council, has been lodged and reflects the following.

The Fire Department of the Borough of Carlisle is composed of four volunteer fire companies, one of which is the Cumberland-Goodwill Fire Company. The borough ordinance establishing a fire department provides:

*"Section 22-1. Composition.*

*"The several volunteer fire companies* now in service in the Borough of Carlisle . . . and any additional fire companies located therein which may hereafter be recognized by ordinance of the Borough of Carlisle, *shall together form the Fire Department of the Borough of*

*Carlisle,* Pennsylvania, hereafter designated the 'fire department.' " (emphasis added)

The borough, pursuant to ordinance and written agreements with each volunteer company, provides substantial annual financial allocations to the companies:

*"Section 22-20. Borough appropriations authorized.*

*"There shall be appropriated and paid out of the proper funds of the Borough of Carlisle annually, for the support and maintenance of the volunteer fire companies comprising the Fire Department of the Borough of Carlisle, such sum or sums as the borough council may determine at* the beginning of each and every year hereafter . . . ." (emphasis added)

The terms and conditions of the appropriations are set by the ordinance.[1] Among other things, the allocations are used by the companies to pay the salaries

---

1. *"Section 22-21. Terms and conditions of appropriations.*

"The said appropriation shall be made to the said fire companies and each of them upon the terms and conditions following:

"(A) Each of the pumping (engine) companies shall keep and maintain in the Borough of Carlisle in good working order at least one motorized pumping engine; each ladder company shall keep and maintain in good working order at least one motorized aerial ladder truck.

"(B) Said volunteer fire companies shall at all times properly house and care for all hose and other fire equipment entrusted to them for their use by said borough.

"(C) All fire apparatus of the Carlisle Fire Department shall be kept and maintained for the principal purpose of extinguishing fire within the limits of the Borough of Carlisle, any departure from said principal purpose of employment to be strictly in conformance with rules and regulations that may be made from time to time by borough council . . .

"(D) *Each fire company shall submit quarterly to the fire chief a financial report detailing the use of the funds so appropriated."* (emphasis added)

of full-time drivers. The allocations constitute a portion of the annual revenue of each company. The borough has no ordinance or resolution establishing the individual salaries for paid firemen of the companies. In addition to the financial allocations, the borough has transferred firefighting equipment to the volunteer fire companies and assisted in the financing of such equipment.

Each volunteer fire company through its apparatus committee exercises supervisory authority over its members, including paid drivers. The fire chiefs of each volunteer company are responsible for hiring paid drivers. The Fire Department of the Borough of Carlisle has a fire chief and subordinate officers who are paid by the borough.[2] The supervisory duties of the fire chief are set forth in the ordinance:

*"Section 22-8. Supervisory duties of fire chief.*

*"The fire chief,* or in his or her absence the deputy fire chief, or in his or her absence the assistant fire chief so assigned, *shall have full control over all fire apparatus and of the members of the fire department at all times.* It shall be the duty of the fire chief or other above-named officers, while serving as such, to superintend the fire department while doing public service and to give general and specific orders as to the manner of fighting fires, the use of hose and apparatus and the specific duties and assignments of the various

---

2. *"Section 22-2. Officers.*

*"The fire department shall be under the command and direction of an officer to be known as the 'fire chief'* and other officers who shall be known as 'deputy fire chief,' 'assistant fire chief,' 'administrative officer,' 'fire prevention officer,' 'training officer' and 'emergency medical services officer. . . .'"* (emphasis added)

members of the volunteer fire department in attendance thereat." (emphasis added)

In practice, the fire chief, at the scene of fires, co-ordinates firefighting through the chiefs of each volunteer fire company.

On April 1, 1983, Daniel Zeigler was hired as a full-time driver by the apparatus committee of the Cumberland-Goodwill Fire Company. Zeigler was a member of that volunteer fire company. The borough did not participate in Zeigler's hiring. The apparatus committee set Zeigler's rate of pay and work schedule. Zeigler's paychecks were drawn on the account of the Cumberland-Goodwill Fire Company, and the company withheld taxes from his wages and issued his annual W-2 statements. The company paid for Zeigler's unemployment compensation. All paid drivers of the fire department are permitted to participate in the borough's Blue Cross/Blue Shield medical plan, which Zeigler did. Premiums for the plan are deducted by the borough from annual appropriations to the volunteer companies. While employees who are paid directly by the borough receive benefits besides a health insurance plan, the borough does not provide those benefits to members and paid drivers of the volunteer fire companies. Zeigler received some other benefits from the Cumberland-Goodwill Fire Company such as a uniform allowance. As mandated by Pennsylvania law, the Borough of Carlisle covers all members of the fire department for workmen's compensation.[3] The annual budget of just the Cumberland-Goodwill Fire Company is now between $300,000 and $400,000 of which about $100,000 is received from the Borough of Carlisle.

---

3. 77 P.S. §1031.

In 1994, plaintiff earned gross wages of $29,497.20; however, on December 12, he was discharged by the Cumberland-Goodwill Fire Company from his position as a paid driver. Plaintiff applied to the Borough of Carlisle for benefits under the Heart and Lung Act, claiming that he suffers from a work-related myocardial infarction. The Act provides in pertinent part at 53 Pa.C.S. §637:

"(a) [a]ny . . . *fireman . . . of any . . . borough* . . . who is *injured in the performance of his duties* . . . and by reason thereof is *temporarily incapacitated* from the performance of his duties, *shall be paid by the . . . municipality, by which he is employed,* his full rate of *salary, as fixed by ordinance or resolution, until the disability arising therefrom has ceased.* All medical and hospital bills, incurred in connection with any such injury, shall be paid by the . . . municipality. During the time salary for temporary incapacity shall be paid by the . . . borough . . . any workmen's compensation received or collected by any such employe for such period, shall be turned over to the . . . borough . . . and if such payment shall not be made by the employe the amount so due the . . . borough . . . shall be deducted from any salary then or thereafter becoming due and owing.

"(b) In the case of . . . *salaried . . . firemen* who have served for four consecutive years or longer, *diseases of the heart* . . . contracted or *incurred by . . . them after four years of continuous service as such, and caused by extreme overexertion in times of stress or danger or by exposure to heat, smoke, fumes or gases, arising directly out of the employment of any such . . . fireman, shall be compensable in accordance with the terms hereof . . . .*"

The sole issue in this appeal is whether plaintiff was a fireman entitled to receive benefits under the Heart and Lung Act. If he is entitled, it will then have to be determined if he is eligible for such benefits. In *Organ v. Pennsylvania State Police,* 112 Pa. Commw. 352, 357, 535 A.2d 713, 715 (1988), the Commonwealth Court stated that "the purpose of the Heart and Lung Act is to provide *important safety personnel* with full compensation while disabled from work-related injuries." (emphasis added)[4] In *Organ,* the Commonwealth Court stated:

"The Statutory Construction Act requires that all provisions of a statute enacted 'prior to September 1, 1937 which are in derogation of the common law' be strictly construed. 1 Pa.C.S. §1928(b)(8). The Heart and Lung Act, enacted in June of 1935, is in derogation of the common law in that it provides that employers can be liable without fault. Therefore, the Statutory Construction Act requires that the language of the Heart and Lung Act be strictly construed." *Id.* at 355 n.5, 535 A.2d at 714 n.5.

Plaintiff maintains that subsections (a) and (b) of section 637 of the Heart and Lung Act are to be read independently, and that subsection (b) should be given

---

4. In addition to any fireman, policeman or park guards of any county, city, borough, town or township, the public safety personnel covered by the Heart and Lung Act include any member of the state police force, any enforcement officer or investigator employed by the Pennsylvania Liquor Board, and the parole agents, enforcement officers and investigators of the Pennsylvania Board of Probation and Parole, capital police officers, certain corrections officers employed by the Department of Corrections, certain employees of the Department of Public Welfare, certain drug enforcement agents of the office of Attorney General, and any member of the Delaware River Port Authority Police. 53 Pa.C.S. §637.

a liberal interpretation; therefore, he is entitled to benefits solely on the basis that he was a salaried fireman. In *Buchanan v. Pennsylvania State Police,* 152 Pa. Commw. 608, 620 A.2d 575 (1993), the Commonwealth Court concluded, that where there is a disease of the heart incurred after four years of continuous service caused by extreme overexertion in times of stress and danger arising directly out of employment, an entitled claimant is eligible for benefits under subsection (b), but benefits are paid under subsection (a) for any resulting disability that is temporary in nature.[5] Thus subsections (a) and (b) of section 637 were interpreted together. Plaintiff also cites *Colyer v. Pennsylvania State Police,* 165 Pa. Commw. 41, 644 A.2d 230 (1994), maintaining that subsection (b) is not to be construed strictly, but rather is to be given the standard of construction found in workmen's compensation cases. To the contrary, the Commonwealth Court in *Colyer,* after setting forth the various differences between the Workmen's Compensation Act and the Heart and Lung Act, concluded that the Heart and Lung Act is to be given a strict construction.

---

5. The Commonwealth Court upheld the denial of benefits sought in *Buchanan* because the evidence did not support a conclusion that claimant's heart attack was work-related; thus claimant, a Pennsylvania state trooper, while entitled to benefits, was not eligible for benefits. *Buchanan* noted that an employee covered under the Heart and Lung Act who is seeking benefits for a heart condition is given a presumption under section 637(b) that his heart condition is work-related if he has worked for four consecutive years in that position. The initial burden is on the employer to prove that the heart condition is not caused by extreme overexertion in times of stress or danger or by exposure to heat, smoke, fumes or gases, encountered any time after four consecutive years of employment.

The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the general assembly. 1 Pa.C.S. §1921. The Heart and Lung Act, to say the least, is convoluted. A strict construction of section 637(a) and (b) of the Heart and Lung Act, reflects that a fireman, who seeks benefits under section 637(b) for a claimed disease of the heart, must be a *salaried fireman* with at least four years of continuous service (subsection "b") *employed by any [borough]* (subsection "a"). The Borough of Carlisle maintains that plaintiff is not eligible for such benefits because, (1) he was not an employee of the borough, and (2) because his salary was not fixed by ordinance or resolution of the borough or paid by the borough. Section 637(a) of the Heart and Lung Act does not define the word "employed." Because the statute does not provide a definition of "employment," common law concepts are used to determine whether such a relationship exists. *Harmony Volunteer Fire Co. v. Pennsylvania Human Relations Commission,* 73 Pa. Commw. 596, 459 A.2d 439 (1983). As set forth in *Harmony:*

"The relation of master and servant exists where the employer has the right to select the employee, the power to remove and discharge him, and the right to direct both what work shall be done, and the way and manner in which it shall be done. *The employer's power to control the nature and the parameters of the employee's activities is the key to the relationship.* Although the duty to pay a salary is often coincident with the status of employer, it is not an absolute prerequisite." *Id.* at 601, 459 A.2d at 442. (emphasis added) (footnotes and citations omitted)

In *Local 1400, Chester City Fire Fighters Association v. Nacrelli,* 52 D.&C.2d 34 (Delaware 1971), the issue was whether paid fire drivers of five independent vol-

unteer fire companies located in the City of Chester were employees for the purpose of organizing to bargain collectively under the Act of June 24, 1988 (Act 111) 43 P.S. §§217.1-217.10. The City of Chester appropriated money, annually, to cover the expenses and operation of the firehouses of the five independent volunteer fire companies, including the payment of the salaries of employees. The city employed a fire chief on its payroll. The Chester City Code set forth the manner and means by which the City of Chester, through its fire chief and assistant fire chiefs, supervised and controlled the volunteer fire companies, the paid drivers and the other firefighters, as well as the manner and means of fighting fires. The city acted on the budgets submitted by the volunteer fire companies and had power to adopt and modify the budgets submitted by those companies. In adopting and modifying the budgets, the city set the wages and salaries of the paid drivers and was the source of their compensation. Act 111 applies inter alia, to firemen employed by a political subdivision of the Commonwealth. The Court of Common Pleas of Delaware County concluded:

"The source of compensation of the paid fire drivers is the City of Chester. The City of Chester purchases, owns and maintains the firefighting equipment, and appropriates money to cover the expenses of firehouse buildings as well as rent for the housing of its fire equipment. Moreover, the fire chief and his two assistants, who are unquestionably employes of the City of Chester, supervise and control various aspects of the volunteer fire companies, the paid fire drivers and other fire companies, as well as the manner and means of fighting fires at the scenes thereof. These same officers have the right to bring about the suspension or expulsion of a paid fire driver for nonperformance of

duties at the scene of a fire. Other analogous factors are contained in this record, all of which, when combined with the factors and circumstances hereinabove set forth, lead to the conclusion that the subject paid fire drivers are 'public employes' within the intendment of the Act of 1968, *supra.* " *Local 1400, Chester, supra* at 41-42.

In his brief in the case sub judice, plaintiff states that the Delaware County case "unequivocally demonstrates that in this situation, the Borough of Carlisle exercised an almost identical degree of control as that exercised by the City of Chester." That is a considerable overstatement because, unlike in the present case, the City of Chester appropriated funds to cover all of the operating expenses of the volunteer fire companies, the city set the wages and salaries of the paid drivers of those companies, and the city code detailed the manner and means by which the city through its fire chief and subordinate chiefs supervised and controlled the volunteer fire companies and their paid drivers as well as the manner and means of fighting fires. The Borough of Carlisle allows its four volunteer fire companies considerably more autonomy than does the City of Chester; nevertheless, those volunteer fire companies constitute the *Fire Department of the Borough of Carlisle* over which the appointed *fire chief* has *"command and direction"* and is in *"full control over all fire apparatus and of the members of the fire department at all times."* (emphasis added) It is not surprising that the borough through its fire chief retains full control over all of its members at all times because, when a volunteer company provides fire protection for a borough, that is a function public and governmental in nature which would have to be performed by the borough but for the activities of the volunteer company. *Harmony Volunteer Fire Company v. Pennsylvania Human Relations*

*Commission, supra.*[6] As set forth in *Harmony,* it is, "[t]he employer's *power* to control the nature and the parameters of the employee's activities [that] is the key to the [employment] relationship." *Id.* at 601, 459 A.2d at 442. (emphasis added) That *power* over plaintiff herein unequivocally resided with the Borough of Carlisle by ordinance. The fact that the borough did not directly pay plaintiff's salary is not controlling in determining his employment relationship, nor is it controlling that the borough did not exercise all of the power it had over plaintiff but instead delegated daily supervision to the Cumberland-Goodwill Fire Company. We find that plaintiff, who for over 11 1/2 years was a full-time salaried driver and member of the Cumberland-Goodwill Fire Company which is part of the Fire Department of the Borough of Carlisle over which the fire chief has command and direction and is empowered by ordinance to exercise full control over all of its members at all times, *was an important safety person* employed by the borough as the term "employed" is used in section 637 of the Heart and Lung Act.[7]

6. In *Harmony,* the Commonwealth Court concluded that the primary function of a volunteer fire company that provided fire protection service for the Borough of Harmony was governmental in nature. Therefore, the court held that the Pennsylvania Human Relations Commission, which has jurisdiction over entities performing a governmental function, properly determined that the volunteer company discriminated in refusing membership to a woman.

7. Plaintiff also claims that the borough is collaterally estopped from maintaining that it is not his employer because of an order entered by a workers' compensation judge on a separate claim filed by him. The Borough of Carlisle is the *statutory* employer of plaintiff for the purposes of any workmen's compensation claim. 77 P.S. §1031. Any finding of statutory employer status by a workers' compensation judge is not identical to the issue of the borough's status as an employer for purposes of the Heart and Lung Act; therefore, collateral estoppel

The convenient arrangement whereby the borough utilizes the volunteer fire companies and benefits from their performance of a governmental function does not change plaintiff's status.

An additional issue is whether, as the borough maintains, plaintiff still is not entitled to benefits under the Heart and Lung Act because his salary was set and paid by the Cumberland-Goodwill Fire Company and not by an ordinance or resolution of the borough. A strict construction of subsections (a) and (b) of section 637 of the Heart and Lung Act read together does not support the position of the borough. Plaintiff was a salaried fireman for more than four continuous years (under subsection "b") who we have determined was employed by the borough (under subsection "a"). If the statute stated that such a salaried fireman employed by the borough had to be paid a salary as fixed by a borough ordinance or resolution *to be entitled* to benefits, then plaintiff would not be entitled. Subsection (a), however, does not say that. Rather, it says that a fireman of the borough *who is injured in the performance of his duties and by reason thereof is temporarily incapacitated from performing his duties,* shall be paid by the municipality by which he is employed [which we have determined is the borough], *"his full salary as fixed by ordinance or resolution, until the disability arising therefrom has ceased."*[8] The stan-

---

does not apply. *McCarthy v. Township of McCandless,* 7 Pa. Commw. 611, 300 A.2d 815 (1973).

8. Additionally, the statute provides that "All medical and hospital bills, incurred in connection with any such injury, shall be paid by the . . . municipality. During the time salary for temporary incapacity shall be paid by the . . . borough . . . any workmen's compensation received or collected by such employe for such period, shall be turned over to the . . . borough . . . and if such payment shall not be

dards in the statute for *entitlement* are not controlled by the manner in which any *eligible* fireman is to be paid benefits. The obligation to pay a salary, while often coincident with the status of an employer, is not a prerequisite to the determination of employer status. Once, however, employer status, *i.e.,* entitlement, has been established, as it has been in this case, the benefit of full salary due under section 637 of the Heart and Lung Act to any salaried fireman who is then eligible because he is injured in the performance of his duties and temporarily incapacitated from performing his duties, must be paid by the borough whether or not it had previously been paying that salary. The requirement of the borough to fix the salary component of the benefits under the Heart and Lung Act by ordinance or resolution legally obligates the borough to pay that benefit whether or not such funds are budgeted. The words "as fixed by ordinance or resolution until the disability arising therefrom has ceased," refer to the payment of the benefit of full salary to an eligible fireman, not to the entitlement for that benefit which is a separate requirement that hinges on employment status. Since plaintiff is entitled to benefits under the Heart and Lung Act, then *if* he is also eligible because his heart condition was incurred in the performance of his duties, and he was temporarily incapacitated from the performance of his duties, the benefit of his full salary must be paid by the Borough of Carlisle as fixed by ordinance or resolution until the disability arising therefrom has ceased.

For the foregoing reasons the following order is entered.

---

made by the employe the amount so due the . . . borough . . . shall be deducted from any salary then or thereafter becoming due and owing."

## ORDER

And now, December 1, 1995, the decision of the Carlisle Borough Council that Daniel L. Zeigler is not eligible for benefits under the Heart and Lung Act, is reversed.